## EX PARTE HENRY HENDERSON.

1. Appeals may be taken from the Justice's Court to the Circuit Court and tried by the latter agreebly to the Constitution.

2. The grant of one power by the Constitution is not necessarily exclusive of another power.

3. The Circuit Courts are not confined wholly to cases of original jurisdiction.

4. They have for the most part the power of the Court of King's Bench in England.

5. A mandamus will lie from this Court to the Circuit Court in case of refusal to entertain jurisdiction when directed by law.

6. The jurisdiction of the Circuit Courts and Supreme Courts compared.

7. The trial of an appeal case by the Circuit Court, is rather the exercise of original than appellate jurisdiction, but whether original or appellate the exercise of the power is not in conflict with the Constitution of the State.

This is an application for a mandamus to the Judge of the Circuit Court of the Eastern Circuit, for Putnam County, to hear and adjudicate an appeal taken from a Justice's Court to the Circuit Court,

To the rule to show cause why a mandamus should not issue, Hon. W. A. Forward, Judge of the Eastern Circuit made the following answer:

Ex Parte Henry Henderson, on motion for Rule to show cause why Mandamus should not issue.

———

In obedience to Rule issued in this cause, the Judge of the Circuit Court most respectfully shows cause as follows, to wit:

In the *first* act organizing the " Territory of Florida," Congress enacted, "That the Judicial Power shall be vested in two Superior Courts, and in *such Inferior Courts* and *Justices of the Peace*, as the Legislative Council of the Territory may from time to time establish."

The Legislative Council established County Courts and Courts of Justices of the Peace, with appeal from Justice's Courts to the County Courts.

It was *not, however*, until the third amendment was made by Congress, to wit: on the 26th March, 1824, that it was

provided the *Superior Courts* "SHALL HAVE AND EXERCISE APPELLATE JURISDICTION OVER THE INFERIOR COURTS OF SAID TERRITORY."

This organic act of Congress is to be regarded as the CONSTITUTION of the Territory, containing *grants* of power. See Ponder Executor vs. Graham, 4 Florida R., 23.

After this power was conferred upon the *Superior Courts* the Territorial Legislature passed the act under which it is now claimed, appeals lie to the Circuit Courts of this State, and is the act in question, and which act was in force at the time the State Constitution went into effect in 1845.

When passed it was a constitutional and binding law, and proper for the action of the Territorial Legislature.

The question is whether on the orgaization under our State Constitution, it is in conflict with that Constitution.

Upon our passing from a Territory to a State, our State Constitution differed from the *powers* conferred by acts of Congress in this, that it was a "*restriction of power primarily possessed.*" See Ponder vs. Graham.

We framed our Constitution immediately in succession of Arkansas, and from the Constitution of that State we seem to have drawn largely. Yet it will be seen that their Constitution expressly provides, that "the Circuit Courts shall exercise a superintending control over the County Courts and over Justices of the Peace." See collection of American Constitutions. Upon examining the State Constitutions, it will be found that in every State where Circuit Courts have appellate jurisdiction it is *expressly* conferred.

36

By the Constitution of the State of Florida, the "judicial power" of this State is vested in a Supreme Court, Courts of Chancery, Circuit Courts and Justices of the Peace, and the General Assembly may vest criminal jurisdiction, (not capital,) in Corporation Courts.

The second section of the fifth article says: "The Supreme Court, *except* in cases otherwise directed in this Constitution, shall have appellate jurisdiction *only*, which shall be coextensive with the State, under such restrictions and regulations not repugnant to this Constitution, as may from time to time be prescribed by law, provided, that the said Court shall always have power to issue writs of injunction, mandamus, quo warranto, habeas corpus, and such other remedial and original writs as may be necessary to give it a general superintendence and control of all other Courts.

The Supreme Court of Florida, in ex parte White, 4 vol., page 165, in giving construction to the above second section, held that the jurisdiction of that Court was *two-fold* ; *first*, appellate jurisdiction ; proper, and *secondly*, a general superintendence and control of *all* other Courts ; and this by means of *all* appropriate, *original* and *remedial* writs known to the common law.

Again, they say, the "exception" in the first clause of the section points to the power contained in the *proviso*, and this power the Court would not have had from the mere grant of " appellate jurisdiction only."

And again they say :   " It places this Court, with regard to all other Courts of this State in the same position, in this respect which the Court of King's Bench in England occupies, in relation to the Inferior Courts of that kingdom.—

It gives a superintending authority and control, the power to overlook and to govern, check and restrain all other Courts."

It would seem then, that the Supreme Court have all the jurisdiction necessary.

Let us see what has been vested in this respect in the Circuit Courts.

The sixth section provides, that "the Circuit Courts shall have *original* jurisdiction in all matters civil and criminal, within this State not otherwise *excepted* in this Constitution.

Here then is a "restriction of power primarily possessed," so far as appellate jurisdiction is concerned, and which was conferred on the Superior Court.

No *appellate* jurisdiction in the Circuit Courts can be found in the said sixth section of the Constitution. And of the *original jurisdiction* thereof, there does not seem a doubt but that *remedial* and *original* writs necessary for a general superintendence and control of *all other* Courts, (excepting Courts of Ordinary in the ninth section,) are "*excepted*" in the second section and given to the Supreme Court.

And this appears to have been the intention of the framers of the Constitution, for they have *not limited* the Circuit Courts in *original* jurisdiction to *any* amount or proper subject.

Persons are not compelled to sue in Justice's Courts, but if from convenience or expedition in collecting; they do resort to that tribunal, then appeal goes to the Supreme Court, as from the Circuit Court to the Supreme Court.

It is contended that there is no express *prohibition* against the vesting appellate jurisdiction in Circuit Courts. If this is a good argument, then it can be invested in Probate Courts or any Courts created for that purpose. The answer to such a proposition presents itself, by enquiring from whence the Circuit Court derives its power? It does not derive it from the Legislature. It can only exercise such powers as the Constitution itself confers, or authorizes the Legislature to grant. It can derive no power elsewhere.

In the language of the Supreme Court of Ohio, in Kent, *et. al.* vs. Mahaffy, *et. al.*, 2 Ohio R., 498, which is a case arising under an act of the Legislature of that State, attempting to confer original jurisdiction on the Supreme Court, by authorizing it to grant an injunction in a case pending in another Court, and which by parity of reasoning, is like the case now under consideration, that Court says : "It follows that to negative the existence of a power, it is not necessary to show that it is forbidden by the Constitution. It is sufficient that that instrument neither directly nor indirectly confers it. Now as before said, the only original jurisdiction granted to us by the Constitution, is that above mentioned, and the only jurisdiction that the Legislature is authorized to confer upon us as a Court, is *appellate* jurisdiction. See Constitution of Ohio, adopted in 1851, and Kent, et. al. vs. Mahaffy, et. al., above cited.

The tenth clause of the fifth article of the Constitution is in these words:—

"A competent number of Justices of the Peace shall be from time to time, appointed or elected in and for each county,

in such mode and for such term of office as the General Assembly may direct, and shall possess such jurisdiction as shall be prescribed by law. And in cases tried before Justices of the Peace, the right of appeal shall be secured under such rules and regulations as may be prescribed by law."

Now then it will be seen that *no tribunal* is specified to which this appeal is "secured." The natural inference to a legal mind is that it is to be to the Court having *appellate* jurisdiction.

But it is contended that the tribunal is left open as one of the "regulations" to be prescribed by law.

It may be that fixing a *tribunal* which shall have the jurisdiction of such cases in the face of the provisions of the second section, which gives to the Supreme Court, " a general superintendence and control of all other Courts," is one of the "regulations" spoken of, but we in our humble judgment cannot so view it.

That the right of appeal is "secured" by the Constitution there is no doubt, but we think it is to the Supreme Court, which has all the *appellate* jurisdiction, and not to the Circuit Court, which has only original jurisdiction.

If appellate jurisdiction can be conferred on the Circuit Court from one tribunal it can be from all, and there is no meaning in the Constitution where it authorizes the Supreme Court to issue such *remedial* and *original* writs as may be necessary to give it a general superintendence and control of *all other Courts*.

The framers of the constitution intended that appellate Courts and Courts of original jurisdiction should be separ-

ate and distinct, and for that purpose provided for the creating of a separate Supreme Court.

Under the Territorial system "which has been acted upon as we think illegally, since the State organization, a man with a $50 debt, may sue in the Justices Court, have a jury trial there, and if disatisfied appeal to the Circuit Court, have *another jury trial,* and then if disatisfied appeal to the Supreme Court, while an individual with a $5000 debt, cannot have but *one jury trial.*

If the constitution intended such a distinction, it is without a parallel in this republic.

Then, in our opinion, the Supreme Court is a constitutional tribunal, and clothed with exclusive appellate jurisdiction.

It is a universal rule of construction, that the grant of a principal power, *ipso facto,* includes all minor, subsidiary powers incidental to the exercise of the main power.

The Legislature possesses no power either by acts of commission or omission, to alter or destroy the separate and independent constitutional jurisdiction of our respective Courts. Then by *omitting to act* as well as by acting in an unwarrantable manner, they should not be permitted to defeat the main object and design of the constitution, which is to establish and administer an impartial system of public justice, for the maintainance and protection of personal rights and private property.

*G. W. Call, Jr.,* for the motion.

BALTZELL, C. J., delivered the opinion of the Court.

This is an Application for a madamus to the Judge of the Circuit Court of the Eastern Circuit to hear and adjudicate an appeal taken from a Justice of the Peace of Putnam County.

The Constitution of the State provides that "in cases tried before a justice of the peace, the right of appeal shall be secured under such rules and regulations as may be prescribed by law." "Art. 5, section 10th.

The first State Legislature provided that "the Circuit Courts respectively shall have and exercise the original and appellate jurisdiction conferred by the Constitution of this State and all original and appellate jurisdiction had by the Superior Courts of the several districts of the Territory of Florida, and of the County Courts of the several counties of the Territory, under the laws of the Territory not inconsistent with the constitution and laws of the State." Laws 1845 Thomp. 54.

Amongst the laws passed by the first Territorial Legislature in 1822 we find an appeal given to the Circuit Court, on all judgments over ten dollars, and it was to be tried as [soon as] an *original cause* open to all legal testimony, "p. 92. In 1823 and '24, the circuit Court was directed to hear and determine appeals from justices in a summary way without pleading in writing, according to the justice of the case. p. 244. In 1832 the Superior Courts were directed to try such cases *anew on their merits* and without requiring written pleading. Thomp. 364.

And so the laws have continued to the present day.

It is contended now that the Circuit Court cannot adjudicate these cases, having no power to do so under the Constitution of the State but that this duty belongs to and should be performed by the Supreme Court.

It is very obvious that the Constitution designed some of the tribunals created by it to discharge this function. It seems to have been an object of such consideration

with its framers, as to require a special provision, showing
that their attention was directed and addressed to the very
subject.

Whilst we admit our own impressions, derived from wit-
nessing the admitted and uncontested operation of the
law, as well under the Territorial as under the State Gov-
ernment for a period of near thirty years under the Supe-
rior Courts of the Territory as well as the Circuit Courts
of the State, to be adverse to the position assumed by the
intelligent Judge of the Circuit, we have yet in deference
to his opinion endeavored to consider the subject with
reference to its merits, and a determination to give to the
arguments on that side the fullest and most deliberate con-
sideration.

Very fortunately the question may be decided free from
the perplexities attending the conflict between the Federal
and State judicatories, often involving points of vital inter-
est to the cause of civil liberty ; for it is not to be denied
that this blessing under our complex system of Govern-
ment, can alone be secured by the mutual observance and
respect of the proper boundaries existing between the two
sovereignties.. The question so important in this aspect,
ceases in a degree to have that paramount interest when
regarded between citizens of the same State, under the
State Constitution. Then the great concern is to give to
parties in Court, through the tribunals provided by the
constitution, a full, fair and impartial trial, and ensure as far
as may be, a rightful decision of the matter in contest.
Such will be our aim on the present occasion.

We do not concur in the opinion that the case of an ap-
peal from a Justice of the Peace is a case of appellate ju-

risdiction, in the sense in which this term is used in the Constitution confering it on this Court. The fact is, it is of a mixed character, having but one ingredient of appellate power, in that it has its origin in the Inferior Court, whilst in all other respects it is and from the commencement, as well by the Legislature as the Courts, has been treated and regarded as if originally instituted in the Circuit Court, with the single exception, that written pleadings are not required. The case is directed to be tried anew in the Circuit Court, and is to be continued after Judgment, until final execution. This undoubtedly is the exercise of original jurisdiction. Here is no revision and correction of error of law merely, no remitting of the case below for further trial

"An appeal is a process of civil law origin and removes a cause, entirely subjecting the fact as well as the law, to a review and a retrial. A writ of error is a process of common law origin, and it removes nothing for re-examination but the law. The former mode is usually adopted in cases of equity and admirality jurisdiction,—the latter in suits at common law tried by a jury." 3 Story Com. Conf. 628. 3 Black. Com. 66. 3 Dallas 321. 6 Wh. 402.

"The Judgment of the Court of Common pleas and of all inferior Courts in England, if erroneous, must be brought under the review of this Court (the King's Bench) for revision and correction; the Judgments of the Common pleas and of other inferior Courts of record, when the proceedings are according to the course of the common law, by writ of Error; the judgments of inferior Courts of record when the proceedings are summary or different from the

course established by the common law, by writ of certiorari, and judgments of the inferior Courts not of record, by writ of false judgment." 4 Arch. prac. 4.

So in New York "it is well settled that on a return to a common law certiorari no other questions can be raised than those relating to the jurisdiction of the Court or officer before whom the proceedings are had, and that decisions as to the admission or rejection of evidence or instructions to a jury on submitting the case to their consideration, cannot be reviewed by certiorari, the policy of the law in creating these summary jurisdictions being, that their decisions on the merits shall be final and conclusive, and that if they err upon questions either of law or fact, the parties are without remedy." 1. Graham's Prac. 377.

"This writ, the certiorari, is to restrain the return of all inferior magistrates, within their legal grasp. If they go wrong, upon the evidence, it is the misfortune of the parties. 17 Wendell 668. "So a certiorari was refused because it was founded not on a want of jurisdiction, but on the merits." Nichols vs. Williams 8 Cow. 13. Key. vs. White, ad. 2. Denio 549. The People vs Vermilyea 7 Cow. 108."

In very recent cases says the author above quoted "the Supreme Court of New York has wholly denied their power to re-examine on certiorari, the decisions of inferior jurisdictions on questions of fact, or on the legality of their decisions within their jurisdictions, or that their tribunals are to state facts in their return at all, except such as respects their jurisdictions."

1 Graham 378. Starr vs. Trustees of Rochester, 6 Wend., 564, 17, ib. 64. 2 Hill 9—398.

The appeal then given by the constitution is a proceeding unknown to the English Statutes and common law, hence the rules of distinction of a technical character under those laws are inapplicable to it. It is the Statutory regulation existing under the Territorial Government that the framers of the constitution had in view and intended to secure in making the special laws under consideration, and we have already seen that in these statutes the case is treated as an original cause " to be tried anew," otherwise the clause has no operation and will be of no avail. Considered in this light, we feel no difficulty in regarding the constitution as having allusion to these statutes and designing their continuance, and in holding the case to be of original jurisdiction.

In this connection we think proper to remark that the Circuit Courts of the State perform the office and discharge the functions of the Court of King's Bench of England, and not the Supreme Court of the State. This latter is the Court of last resort, and has its analogy in the Supreme Court of the United States and the Courts of Appeal of the States. Its action is original in the very few cases stated by the Constitution, and that rather in aid of its appellate jurisdiction; its appropriate office is to revise and correct the action of the Inferior Courts. The Circuit Court partakes in a degree of these powers, as we shall see by reference to the jurisdiction of the Court of King's Bench. "Its jurisdiction is very bright and transcendent. It keeps all inferior jurisdictions within the [bounds of their authority, &c. It superintends all civil corporations in the kingdom. It commands magistrates and others to do what their duty requires, in every case where there is no other

special remedy.   It protects the liberty of the citizens by speedy and summary interposition."   3 Black.  Commentaries, 42.

In case of trial before the Circuit Court, the party, if dissatisfied and the sum be sufficent, may take his appeal to the Supreme Court, but the case is tried there not anew as before the Circuit Court, but upon errors shown to the Court, in the record, by a bill of exceptions, and this constitutes the exercise of appellate power in a common law case, to which the Supreme Court is confined in its adjudication of such cases.   But if this Court were competent both by the constitution and laws, and could empannel a jury to try such cases, it is very obvious they could not by possibility discharge the duty.   The Court is holden once a year in four districts, in one county of each district.   What then would become of appeals taken in other distant counties ?   Is it not obvious that the right would be in name merely, and of little or no value ?   Not so with the Circuit Courts, organized to transact civil and criminal business in every county in the State, whose performance of this duty for so many years past, with such entire satisfaction to the public, is the best evidence that the power has been rightfully and properly confided.

If the power were actually appellate, we do not perceive the objection to its being confided to the Circuit Court.   What objection can there exist to the exercise of this power by both Courts?   None that we can preceive. It certainly increases the chances of right and tends to the advancement of justice without injury to any.

Of the exercise of this power by the Circuit Court, it may be remembered, as was well expressed in argument,

that the term "*only*" used in the clause confering the jurisdiction on the Supreme Court, is ommitted in the clause confering the jurisdiction on the Circuit Courts. Now why this omission, unless there was design and a disposition to restrict, not to confine the jurisdiction as in the case of the other Court? We are not disposed, however, to rely upon this view, strong and potent as it may be. The objection is, that there is no express grant of the power. Of objections of a like character to the constitution of the United States, the Supreme Court say "the constitution unavoidably deals in general language. It did not suit the purposes of the people in framing this great charter of our liberties to provide for a minute specification of its powers, or to declare the means by which these powers should be carried into execution. It was foreseen that it would be perilous and difficult, if not an impractible task. The instrument was not intended to provide merely for the exigencies of a few years, but was to endure for a lapse of ages, the events of which were locked up in the incontrovertible purposes of providence. It could not be foreseen what new changes and modifications of power might be indispensable to effectuate the general object of the charter and restrictions and specifications, which at the present might seem salutary, might in the end prove the overthrow of the system itself. Hence its powers are expressed in general terms, leaving to the Legislature from time to time, to adopt its own means to effectuate ligitimate objects and to mould and model the exercise of its powers, as its own wisdom and the public interests should require. Hunter vs. Martin, 1 Wh., 304, 326, 327.

Again, in another opinion of the same enlightened tri-

bunal, on another occasion, we have an extension of the same enlarged views : " A constitution which should contain an accurate detail of all the minute subdivisions of which its great powers will admit, and of all the means by which they may be carried into execution, and of the various subjects of jurisdiction of which its Courts may respectively take cognizance, would partake of the prolixity of a legal code and could scarcely be embraced by the human mind. Its nature, therefore, requires that only its great outlines should be marked, its important objects designated, and the minor ingredients which compose these objects be deduced from the nature of the objects themselves."— McCulloch, vs. State of Maryland 4, Wh., 407.

Again : " Had the faculties of man been competent to the framing of a system of Government, which would leave nothing to implication, it cannot be doubted that the effort would have been made by the framers of our Constitution. The fact, however, is otherwise. There is not in the whole of that admirable instrument, a grant of power which does not draw after it others not expressed, not vital to their exercise, not substantive and independent indeed, but auxiliary and subordinate. There is no phrase in it which excludes incidental and implied powers, and which requires that every thing granted shall be expressly and minutely described." Anderson vs. Dunn 6, Wh., 204. Story, Com. Con., 418.

Again : " It is said that the very distinction taken in the Constitution between original and appellate jurisdiction, pre-supposes that when the one can be exercised the other cannot. The exercise of appellate jurisdiction is far from being limited by the terms of the Constitution to the Su-

preme Court. There can be no doubt that Congress may create a succession of inferior tribunals, in each of which it may vest appellate as well as original jurisdiction. This results from the very nature of the judicial power in the Constitution. There is nothing in the instrument which restrains or limits the power, and it consequently must sub-sist in the utmost latitude of which it is in its nature susceptible. 1 Wh., 337, 9, ib. 820, 6, ib. 392.

Again : " It is admitted that affirmative words are often in their operation, negative of other objects than those affirmed; and that where a negative or exclusive sense must be given to them, or they have no operation at all, they must have that negative or exclusive sense. But where they have full operation without it; where it would destroy some of the most important objects for which the power was created, then we think affirmative words ought not to be construed negatively." 6 Wh., 395.

Again : " It has been suggested that an affirmative pro* vision, in a particular case, excludes the existence of the like provision in every other case, and a negative provision in a particular case, admits the existence of the same thing in every other case. Both of these deductions are or may be confounded in solid reasoning. Thus it was objected to the Constitution, that having provided for the trial by jury in criminal cases, there was an implied exclusion in civil cases, as if there was not an essential difference between silence and abolition—between a positive adoption of it in every class of cases, and a discretionary right to adopt or reject it in all or any other cases. One might, with just as much propriety, hold that because Congress has power to declare war, but no power is expressly given to make peace,

the latter is excluded; or that because it is declared that no bill of attainder or expost facto law shall be declared by Congress, therefore, Congress possess, in all other cases, the right to pass any laws. The truth is, that in order to ascertain how an affirmative or negative provision excludes or multiplies others, we must look to the nature of the provision—the subject matter—the objects and scope of the instrument ; these and these only can properly determine the rule of construction." 6 Wheaton, 395. Federalist, No. 83.

Again : " The truth is that where the words confer only appellate jurisdiction, original jurisdiction is most clearly not given; but where the words admit of appellate jurisdiction, the power to take cognizance of the suit originally, does not necessarily negative the power to decide upon it on appeal, if it may originate in a different Court." 9 Weaton, 820, 21.

We have extended these quotations to some length, that a clear and just view of these exalted instruments may be fixed in the mind and the importance of their observation be fully felt. They are not directly to the point, as in some respects there is not an equal similitude in the provisions of the Constitution of the United States and of our State. Their application will yet be at once perceived.

Indeed where could there be an appeal for information on this interesting subject, but to the works and writings of those great men to whom, above all others, we are indebted for the blessings of the liberty we enjoy ; who framed and constructed the fabric of our Government upon a basis that we trust is perpetual, and to whom we turn in difficulty as to the great luminary, which sheds light and heat upon

the world.   We are instructed by them of the high nature and important character of these instruments, that they are not to be construed in a narrow and restricted light ; that the absence of a particular power or its silence, does not ne. cessarily exclude legislation on the subject; that to do this there must be inconsistency, contrariety, opposition, restriction or prohibition, or that the power has been already exe. cuted.   In the bill of rights attached to our Constitution, it is declared " that to guard against transgression upon the rights of the people, we declare that every thing in this article is excepted out of the general powers of Government, and shall forever remain inviolate, and that all laws contrary thereto, or to the following provisions, shall be void." Art. 1st., declaration rights 27 Sec. Constitution.

We do not perceive repugnancy or contrariety in the exercise of this jurisdiction by the Circuit Court, nor injury, nor inconvenience.   On the contrary, we think great detriment and injury would arise to the public from the contrary course.   To hold even that the Circuit Court has no appellate jurisdiction, no superintendence or control over other Courts, corporations and officers, would be to strip it of most important functions and render it powerless and inefficient in a great degree, for many of the high purposes of justice.   With such action, the symmetry of the organization of the Courts is preserved; without it, disorder and confusion intervene.   Especially so far as the present case is concerned, we have the experience of age—time has consecrated and improved it—fixed it in the affections of the people and to them the loss would be irreparable.   We perceive this in the fact, that of the very many cases which have been taken to each term of the Circuit and Superior

38

Court, for thirty years past, scarcely half a dozen of them have found their way to the Court of Appeals or the Supreme Court. Another fact is of no light consideration; no attempt at any time has been made to amend, alter or improve the law. Were it matter of doubt then under this state of facts, we should feel extreme reluctance to overthrow the practice or declare its unconstitutionality. If the sums are inconsiderable, we see no reason for denying to the man of small means the right of adjudication and trial of his case by the Superior tribunals, equally with his neighbor, who has a case of larger amount.

We have given due consideration to the case cited from Ohio of Kent vs. Mahaffy, 2 Ohio Reps., 498, but find in it no conflict with the positions we have assumed. It decides that the Supreme Court of that State will not issue a writ of injunction to the Court of Common Pleas of the State, as this would be the exercise of original jurisdiction. To this we have no objection; it is in effect the same as the decision made by this Court in ex parte White, 4, Florida, 170.

It is claimed that the case of Ponder vs. Graham, supports the position of the Circuit Judge, as it holds "that a State Constitution *is a restriction of power primarily possessed.*" 4 Florida, 33.

The question in that case was as to the validity of an act of the Territorial Legislature, with which the Constitution of the State adopted thirteen years afterwards, had no connection. If the meaning is that restriction is the characteristic of State Constitutions, we are not prepared to admit it. The great powers of Government are given subject to such restraints only, as the experience and wisdom

of ages have proved to be needful to the protection of the citizen, and such further restrictions upon the agents of the Constitution, the associate departments of Government, as will secure the proper working of the machine, and prevent its efficiency from being impaired or destroyed.

We conclude then that whether the jurisdiction to be exercised in the case be original or appellate, the Circuit Court has the power and should exercise it. But inasmuch as we do not question that the Court below would at once accede to the views of this Court in this respect, we shall direct the opinion to be certified and withhold the writ.