STATE EX REL. EPHRAIM PLEASURE, RELATOR, vs. J. F. Mc-CLELLAN, JUDGE, ET AL., RESPONDENTS—PROHIBITION.

The seventh section of the delinquent tenant act, chapter 3248, Laws of 1881, § 24, p. 705, McClellan's Digest, was, in so far as it authorized the Circuit Court to try *de novo*, or, in other words, as an original cause and anew upon its merits, a case appealed under such statute, from a judgment of the County Judge, inconsistent with §§ 8 and 10, of Article VI, of the Constitution of 1868, as amended in 1875, and inoperative. The purpose and effect of the § 10, of Article VI, was that the appeal in such cases should be to the appellate and not to the original jurisdiction of the Circuit Court, *State ex rel. vs. King*, 20 Fla., 399, *approved*.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion.

*R. H. Fries* for Relator.

The Pensacola City Company, by its reputed agent, filed on June , A. D. 1886, before the Hon. Walter Tate, Judge of the County Court of Escambia County, its affidavit under Chapter 3248, Acts of February 16, 1881, complaining that Ephraim Pleasure continued in possession of certain premises without the permission of his landlord—the said Company. Summons were served on said defendant who appeared by Attorney, traversed said affidavit,

demanded a jury, which was duly empanelled and sworn to try the issues between the parties; both plaintiff and defendant introduced their respective testimony; the Attorneys for the parties made their argument; said Judge delivered his charge to the jury, who retired and rendered their verdict for defendant (the relator herein); the Company made its affidavit for appeal and entered into what is said to be an appeal bond, and reciting among other matters that said plaintiff Company would pay said defendant a certain sum if the Circuit Court (to be held on December 6th, 1886), would affirm the judgment of the County Court; the Company caused transcript of the proceedings of the trial court to be filed in the Circuit Court several days before the first day of said December term; said appellee (Pleasure) specially appeared and moved by his Attorney to dismiss the said appeal for several reasons, and among others that the appellant had failed to file an assignment of errors, and otherwise failed to comply with the law in such cases; thereupon the Attorneys for appellant suggested to the Judge of the Circuit Court that said cause proceed *de novo*, as directed by the last clause of the said Act of February 16, 1881; that said appellee objected thereto on the ground that said legislative act was to such extent null and void under the Constitution of Florida; but said Judge (the Honorable James F. McClellan) would not hear and determine said cause on the record, but caused a jury to be sworn to try the cause on the original complaint and defendant's traverse without notice issuing from said Circuit Court, and allowed verbal evidence *dehors* the record to be introduced; said Judge delivered his charge; the jury retired and returned a verdict for plaintiff.

The relator then suggests that from the foregoing he has reason to believe, and does in fact believe, that said Circuit

Court will issue, or cause to be issued, a writ dispossessing said Pleasure of the premises, and prays a writ of prohibition and general relief.

### ARGUMENT.

1. "The case shall be tried *de novo* in the appellate court" is a legislative mandate to the Circuit Court to try the cause anew. We insist that such mandate is void as a trespass on *judicial* functions. The granting or refusal of new trials belongs exclusively to the judiciary; only the trial or appellate court can impair a judgment for cogent reasons; as soon as it is rendered, the legislative powers cease, except so far as they afford the vanquished party an opportunity to point out wherein the judgment is erroneous, in law or fact. Cooley's Cons. Lim., page 115. Hawes on Jurisdiction, section 18, page 26, and many authorities.

The clause embodies in effect a declaration that the judgment of a court of competent jurisdiction is a nullity and a grant of a new trial to the appellant—a power that can never be constitutionally exercised save by the *judiciary*.

A statute thus designed to deprive a party of the benefit of a judgment is void. Section 18, page 26, Hawes, Ibid.

The legislature would be powerless to direct a trial court to reopen a cause, and for the same reason it is an unwarrantable assumption to direct the appellate tribunal to determine it on the theory of the non-existence of a judgment, *which does actually exist*, and is absolutely conclusive as to law and fact until the contrary is made apparent by the supposed aggrieved party.

If we once concede the constitutional power of the legislature to direct causes once solemnly determined, to be re-tried *de novo* we then declare that the judiciary is not a fixed element of the Federal and State Constitutions.

2. Section 19 of the act February 16, 1881, chapter 3248, specifies the County Judge with exclusive *original* jurisdiction in a special subject matter; *expressio unius exclusio alterius.* When we say *original,* we mean *in the first instance.* Wells on Jurisdiction, section 154, page 149, Hawes, *Ibid,* section 14, page 44, hence, if a party proceeded thereunder *in the first instance* in the Circuit Court, its doings would be absolutely void; how then, can the Circuit Court do indirectly on an appeal what it would be powerless to do directly by an original cause?

A judgment is always supposed to vest the victorious party with higher rights, but the theory of respondent reverses that principle, for it relegates the relator to a worse position in Circuit Court and places the company in a better after the judgment than each previously occupied before its recovery.

The Circuit Court, it is claimed, has original jurisdiction in actions of forcible entry and unlawful detainer; true, for instance, under the act of 1868, which specifies the Circuit and County Courts with concurrent jurisdiction; but, *in this case,* it has not, unless we first wipe out the judgment of a court of competent jurisdiction, and then are prepared to declare that, although the County Court is specified under the act of 1881, the Circuit may, nevertheless, without authority over the subject matter and person, entertain an original jurisdiction.

Assuming for argument that the Circuit Court may entertain such original jurisdiction concurrently with the County Judge under the act of 1881, (a proposition absolutely untenable) yet, in this case, it has not, because when the Company brought its action before the County Judge it was a solemn admission of the County Judge's original jurisdiction; hence, under the Constitutional amendment

of 1875, such original jurisdiction immediately attached, and it is a principle that whichever of two courts of concurrent powers first attaches, the first retains the same and *ipso facto* ousts the original jurisdiction of the other. Wells, Ibid, section 156, page 149. Hawes, Ibid, section 40.

A judgment in the County Court would be a complete bar to an action in the Circuit, and a judgment in the Circuit a bar to the County Court; or, in other words, the judgment of one is conclusive and supreme to the concurrent jurisdiction of all other courts. Hall vs. Dana, 2 Aiken, 384; Smith vs. McIver, 9 Wheaton, 535; Cited by Hawes, Ibid, § 40, page 65.

3. In the Circuit Court the respondent *admitted and argued* that a *de novo* trial is the exercise of original jurisdiction; but now we hear for the first time that a *de novo trial is appellate*—a proposition that embodies in its terms a clear contradiction; for, if that be true, the legislature used meaningless words, and thus performed an idle ceremony in providing for a *de novo* trial. *Ex parte* Henderson, 6 Fla.; State vs. Baker; State vs. Vann, 19 Fla.; and State vs. King, 20 Fla., directly demonstrate that it is the exercise of original jurisdiction. Whatever may have been the reasoning of State vs. Baker, the conclusion is unmistakably correct in so far as it holds that a *de novo* trial is " original " and not " appellate."

In many of the States—as in Texas—the Circuit or Superior Courts have on appeal an original and appellate jurisdiction in certain cases; but we have no such duplex jurisdiction.

" Appellate " jurisdiction necessarily implies that the subject matter has been instituted in and acted upon by some other court whose judgment is to be revised. Story on Cons., § 1761. " Appeal "—(defined by Burrill's Dic-

tionary)—complaint of an injustice done or error committed by an inferior court, whose judgment the court above is called upon to correct or reverse.

An " appeal " *removes the law and facts* for review to the appellate court *on the record*, as certified by the lower court. Walker's Am. Law, 662–663 ; Hawes' Jurisdiction, sections 40–257.

It is the essential criterion of appellate jurisdiction that it *revises* and corrects the proceedings in a cause already instituted and does not create that case. Section 40, Hawes, *Ibid*.

Appeal signifies the *removal* of a cause to a higher court for re-examination. Webster's Unabridged ; that is a re-examination of the case as removed on the record.

A " de novo " trial is an abbreviation for venire " de novo." Lawrence and Rapalje's Dictionary. "De novo" is a second time, " anew ;" " anew " is " not old ;" " not old" is " original ;" hence, a " de novo " trial is " original," and " original " is not " appellate."

The Federal Courts, the highest Courts of the different States and all the Circuit and Superior Courts ; the Circuit Courts of Florida, in appeal can not obtain appellate jurisdiction except by the record, as certified by the trial court. Your Honors will find the same *appeal by record* in the House of Lords, the Queen's Bench and Common Pleas (vide Lawrence and Rapalje, *Ibid.*)

. The destruction of a judgment by an appeal is not and cannot be the law of our State and country which recognize the sanctity of trial by jury ; however much the jury system may need the touch of reform, that system as long as it is retained as now engrafted must be upheld as sacred by the judiciary ; the early founders of this Republic regarded that system so highly that under our Federal Constitution certain questions tried by a jury cannot be re-

opened save by the process of the common law (Art. VII of Amendment), and its letter and spirit are engrafted on our State Constitution that trial by jury shall "remain inviolate forever."

The Pensacola City Co. recognized this principal, for they filed a transcript of the record of the pleadings, etc., of the case, as tried in the County Court in the Circuit, thus making the record the vehicle and channel for "getting into" the appellate tribunal; but, after they "get into" the Circuit, they deny the very means and the only means by which they entered and could have entered into the court and obtain a new trial (before the County or Circuit Court has granted it,) as if none other had been previously had—thus reminding us of Macbeth, "Whereto the upward climber looks into the clouds and scorns the base degrees by which he did ascend!"

There was in fact no difference between the cases as tried in the Circuit and County Courts on the pleadings; hence, the Circuit contradicted the principle of State and Trustees vs. J. P. & M. R. R. Co., XVI Fla., 908, that there cannot be two inconsistent final judgments covering the same subject matter, based up the same pleadings, by the same plaintiff, against the same defendant, and that the first must stand until reversed or opened and vacated (*not by the legislature, but by the judiciary*), and the annihilation of another fixeed principle your Honors have announced; that every fair intendment must be made in the appellate court that an inferior court has acted rightly.

Under our Constitution the County Judge and Circuit Courts in their respective spheres are supreme and sovereign when the admitted powers of one have been exercised; it is no answer to say that another court of equal dignity has held to the contrary—except as an *appellate* court—so that

an affirmance, reversal or correction of the trial court may result very different from totally disregarding a final judgment (concretely merging facts and law), and without which final judgment there could be no *appeal.*

But whatever may be the reasoning of the Baker and other cases, the Legislature in the act of 1885, providing " that appeals by bills of exceptions are hereby authorized from Justices' and County Courts to the Circuit in the same manner as appeals from Circuit to Supreme Courts," shows the intent of the lawmakers, so that no doubt should longer exist, and with a view to uniform practice and procedure in cases tried in all the courts of Florida.

The same idea that a " de novo " trial is the exercise of original and not appellate was prevalent in the mind of the framers of our New Constitution, for they provided in Art. V, Sec. 18, in future legislative organization of County Courts for a trial " de novo " at the option of appellant— thus demonstrating their belief, engendered by all the previous decisions of our Supreme Court, that a constitutional provision was essential to direct a " de novo " trial.

On the whole, we conclude that as the legislature did not provide in the act of 1881 for the County Judge's grant or refusal of a new trial, that the appellant should remove, *not the original papers*, but the transcript of the record of all the proceedings, pleadings, evidence, charge of court, etc., to the Circuit Judge, whose duty it then becomes to do in the premises as to law may appertain.

The writ of prohibition, it is clear, should be granted.

The State *ex. rel.* Alex. Iggans, is virtually the same as this except that the motion to dismiss included one ground not included herein.

The case made out by respondent involves this most remarkable proposition: That a judgment is a valid judgment as to the vanquished party, but is not a judgment at

all as to the victorious party. It is a judgment *so far* as it enables the Company to appeal—for without a judgment there could be no appeal—but it is not a judgment merging certain concrete facts and law, from which certain other legal consequences necessarily result.

How can a judgment—a legal result—be effectual, unless we also concede the constituent causes producing that result? How can the vanquished party of a trial court claim the benefit of an appeal from a judgment unless he be willing to concede to his victorious opponent if not greater, at least corresponding benefits?

A judgment is the judicial determination of certain particular facts and law; strike out those facts and law and there is no judgment; where then is the appeal?

This is undeniable unless we are prepared to recognize the impossible doctrine, that an effect can be produced without a cause.

The truth is, that an appeal does not destroy, but merely suspends a judgment. 3 Dall.

*W. A. & A. C. Blount* for Respondent.

The Legislature of Florida has authorized a trial *de novo* in the Circuit Court of an action by a landlord against a delinquent tenant appealed to that court from a County Judge. Chap. 3248, §7, Laws of Florida.

This legislation is not affected by the provisions of chapter 3584, which merely authorizes the use of another method, and which, besides, does not extend to actions before the County *Judge*.

The question, then, for consideration is whether this provision for a trial *de novo* is in conflict with the Constitution of 1868, as amended in 1875 (Art. VI, §11,), which gives to the Circuit Court only *appellate* jurisdiction over those cases when arising before the County Judge.

This court has decided that it is in such conflict. State *ex rel.* vs. King, 20 Fla.

We submit with great deference, but with equal confidence, that this decision is erroneous, and our whole attempt here will be to justify that confidence.

The logic in the King case is irreproachable, but, while it repudiates the reasoning, it is based upon an assumption of the correctness of the decision, in the case of State *ex rel.* vs. Baker, 19 Florida, and by reason of this assumption is fatally wrong.

That decision is that a trial *de novo* cannot be had in the exercise of that appellate jurisdiction to which the Circuit Court, in cases arising before the lower court, is limited.

Let us examine this proposition.

First upon principle:

The word " appellate " as used in the Constitution is evidently generic, embracing any proceeding by which a cause once tried in a lower court may be removed or transferred into a higher court, and there passed upon, whether that removal and passing upon be effected through the instrumentality of a writ of error, a writ of *certiorari* or an appeal. All of these are known as appellate proceedings. State *ex rel.* vs. Baker, 19 Fla., 27.

It is evident, then, that the word "appellate" in itself furnishes no clew by which we can determine either the method of tranfer to the higher from the lower court, or the method to be used by the higher court in arriving at its determination, after the transfer.

The court in the Baker case erred primarily here, in adopting a narrow definition from an obscure writer of a generic term embracing diverse processes, instead of inquiring whether either of these processes would authorize the power under discussion. We propose to make that inquiry.

Taking each of these processes in turn, it is clear, and we admit, that the authorization of a writ of error or of a writ of *certiorari* would not empower an appellate court to try a cause arising in a lower court *de novo*, but we say that an appeal is an appellate proceeding authorized under a grant of appellate jurisdiction, and that the Legislature may, under a constitutional grant of such jurisdiction to the Circuit Court over actions decided before a County Judge, provide for a trial *de novo* of such action in the Circuit Court.

This results from the very definition of the word "appeal," no matter from what legitimate source we may derive that definition. We cannot go to the common law for it has no such proceeding, and even the word, in the sense of a supervisory proceeding by one court over another, was unknown. Fowell on Appellate Proceedings, p. 350, §1.

But definitions drawn from all other sources are uniform in embracing in the scope of the word the method of re-determination by trial *de novo*, and at least two of them exclude any other method. These sources are:

1. Lexicographers (both lay and legal), judicial definition and text writers.
2. The civil law.
3. The admiralty law.
4. Prevailing American practice.
5. Florida legislation and decisions.

1. Webster's definition is, (Law) "The removal of a cause from an inferior to a superior court for re-examination or review."

Bouvier's is: "A proceeding by which the whole case is examined and tried as it it had not been tried before." *Sub. tit.*, 3.

Tomlin's is identical with Webster's.

Craig's is: " The removal of a cause to a higher court."

Rapalje and Lawrence's is: " A proceeding which removes the whole case, the facts as well as the law."

The Supreme Court of the United States is: " A process * * * which removes the cause entirely, subjecting the facts as well as the law to a review and re-trial." 3 Dall., 327 ; 5 Ib., 283.

Powell's is: " The taking of the cause and its *final determination* from one court or jurisdiction to another * * * to be tried again upon its merits as though it never had been tried." Powell on Appellate Proceedings, p. 44, §10.

" A continuation of the same case and action, being only a transfer from one court to another for final trial and judgment." Ib., p. 104, §6.

" A proceeding by which the action is * * * again tried in the Superior Court." Ib., p. 359, §1.

Similar definitions are found in Lyles vs. Barnes, 40 Miss., 608 ; 1 Gall., 12.

2. The civil law. We get our word appeal, as applied to the re-examination of a cause by an appellate court, from the civil law, and by that law the word had a very definite meaning, embracing, and embracing only, a re-examination of the whole facts and the law without reference to the decision of the court below or any error committed by it—in other words, there was no revision of errors but a re-trial of the cause. 1 Gall., 12, and authorities *ante, passim.*

Even if the trial above were entirely a trial upon the transcript of proceedings below, it would be no less a trial *de novo,* for the fundamental idea was that the dissatisfied party could have his cause tried anew without giving any reasons for his discontent, or showing error in the inferior court. It was purely a new trial of that cause by another tribunal.

3. Admiralty law.  The practice thereat was and is much similar to that of the civil law, but it is a distinct law and deserves a place as a substantive source of definition.

The practice upon appeals in admiralty from the District Courts of the United States to the Circuit Courts is well settled, and upon such appeals not only is the cause tried anew, but amendments are allowed in all the pleadings. 11 Wheat., 38, 115 U. S., 69; 19 Wall., 73,

And new evidence is admitted in the appellate courts. 11 Wheat., 38.

It is true that there is a transcript taken from the lower to the upper court, but this is for convenience in procuring the testimony and proceedings used below, and does not forbid the supplementing the one or varying the other in the court above.    Authorities ante.

4. Prevailing American Practice.   Of course we refer to the practice prevailing in courts of appellate·organization similar to those of our own circuit courts.

In numerous States of the Union, if not in a large majority of them, the trial in a circuit or superior court of an appeal from a lower court, meant a trial *de novo*.

Such was the meaning in Alabama, 5 Porter, 121 ; 21 Ala., 479 ; 36 Ala., 682; in Texas, 20 Tex., 629 ; in Illinois, 24 Ill., 180 ; 27 Ill., 35 ; in Nevada, 2 Nev. 166 ; in Massachusetts, 5 Mass. 376 ; in Connecticut, 15 Conn., 518 ; in Rhode Island, 1 Gall., 12.

And like proceedings, all called appeals, prevailed in other of the States.   Of course, all these appeals were under provisions of statutes, but the bearing of them just here is to show what was meant·in general American jurisprudence by an appeal from an inferior court to a circuit, dis-

trict or superior court, as they were variously termed in the several States.

5. Florida Legislation and Decisions. The statutes of 1822, 1823, 1824 and 1832 (6 Fla., 287), provide for a trial *de novo* in the Circuit Court upon appeal from a Justice of the Peace.

The Statute of 1859, chap. 1013, provides for a trial *de novo* in the Circuit Court upon appeal from the Probate Court.

These provisions were construed to allow amendments in the Appellate Court. Davis vs. Elliott, Adm., V. Fla., 261. And to constitutionally permit the trial *de novo* there. *Ex parte* Henderson, 6th Fla.

So that the only system in Florida in existence up to 1868, by which appeals could be had from inferior courts to Circuit Courts, was a system by which the determination of the appeal should be *de novo.*

We are now able to determine what was the meaning of the word appeal, as one of the appellate proceedings provided for under the grant of appellate jurisdiction in the Constitution of 1868.

As we have before remarked, the civil and admiralty law would preclude anything but a trial *de novo* upon an appeal, but we do not insist upon a construction so narrow, but merely that at the time of the making of the Constitution there existed in American law two methods of determining cases upon appeal. The one upon the record by review, and the other by a new trial *de novo.* Each of these was adapted to the courts to which they were applied. In courts of last resort, Courts of Errors, Supreme Courts and Courts of Appeal, it would have been impossible that cases brought from the various widely separated localities over which these courts had jurisdiction, should be tried *de novo;*

and so in these courts the re-determination was by a review of errors in the court below, upon the record. ' Besides, the courts were to a great extent like the French Court of Cassation—for the purpose of determining the law and making it uniform—which could be well effected only by reviewing decisions upon law questions made by the lower court.

But upon appeals from one local court to another in matters usually of small importance, no such reasons existed. All original sources of testimony were equally accessible to both courts, it was infinitely more important to settle the particular individual litigation than to determine the law, and the size of the litigation was such as to render the costs of a record and bill of exceptions such as to prohibit appeals to be tried upon the record.

These reasons had operated upon almost all the States in the American Union, to cause them to institute differences between the methods of appeals by a central appellate court, and by local appellate courts. And among other States, they had operated upon the Legislature of Florida, which had established one system for its Supreme Courts, and another for its Circuit Courts, when sitting as courts of appeal. This last system had been pronounced constitutional, and had been approved by the Supreme Court and by the practice of the profession for a score of years. *Ex parte* Henderson, 6 Fla.

The makers of the Constitution found this condition of jurisprudence in existence when they undertook to form the Constitution of 1868, and this system was continued under the new Constitution, unless repugnant to it. Fairchild *et al.* vs. Knight *et al.*, 1 Fla., 8771.

And the terms in the new Constitution are to be construed with reference to the system prevailing under the old.

Blanchard and Burrus vs. Raines, 20 Fla. 476 ; 18 Fla., 771.

Upon the application of these principles we rely for our procedure upon appeal to the Supreme Court, and why should not our application of the same principles be sufficient to determine what is allowable upon appeals to the Circuit Court ?

In fine, our argument is this : The Constitution grants appellate jurisdiction to Circuit Courts—this includes all appellate proceedings—an appeal is an appellate proceeding—by every system of law authorizing appeals, on such appeal to inferior courts a trial *de novo* was permissible ; therefore the Constitution authorized trials *de novo* upon appeals from a lower court to a Circuit Court.

Secondly upon authority :

The Supreme Court of Nevada has, under a Constitution (of 1864) almost identical in this respect with ours, decided that a grant of appellate jurisdiction to the Circuit Court authorized the Legislature to provide for a trial *de novo* in the appellate court.  Cavanagh vs. Wright, 2 Nev., 166.

We find no other authority where this point was directly involved, but we find that in the following States, where the Circuit Courts have constitutional jurisdiction of appeals (which, of course, is equivalent to, and if not equivalent to, is still narrower than appellate jurisdiction) from lower courts, a trial *de novo* in the appellate court is authorized by the Legislature and enforced by the courts : In Alabama, under Constitution of 1819, Art. V., sec. 10 ; 5 Porter, 121 ; 21 Ala., 479.  So under the Constitution of 1865, Art. 6, sec. 9 ; 36 Ala., 682.  In Texas, under Constitution of 1866, Art. 10, sec. 6 ; 20 Texas, 729.  In Illinois, under Constitution of 1848, Art. V., sec. 8 ; 24 Ill., 180 ; 27 Ill., 35.

And note that the removal of a cause from a State to the

Federal Circuit Court (even after judgment in the discretion of Congress) is an appellate proceeding, although the Federal Court cannot consider any errors committed by the State Court before removal.   1 Kent's Com., 321 ; Story's Com. on Const., sec. 1745.

The arguments *contra* our position are :

1. That a trial *de novo* is the exercise of original jurisdiction.   If our foregoing argument is correct, that it is the exercise of appellate jurisdiction, of course it cannot be of original jurisdiction.

But we may go further.   Original jurisdiction is the exercise of jurisdiction in the first instance.   Bouvier's Law Dictionary.

And it is impossible to say that a trial in a court is the exercise of original jurisdiction unless the cause originated in that court, and if it originated elsewhere, it would seem equally impossible to say, with reason, that any manner of determination in that court could make the cause originate there.

The whole doctrine of original jurisdiction, which is elaborated in the Baker case, is founded upon the decisions there cited.

But in the Henderson case, which is one of the citations, the court admits that it is not original, but say that it is of *mixed* jurisdiction, a fancy that is dispelled with but slight reflection.

We have not before us the other cases cited, but our recollection is that they do not sustain the position assumed, but that the Missouri cases (or at least one of them, upon which the others are founded) place the want of a power in the appellate court to try *de novo.* upon the want of a *statutory* provision which the Constitution would have allowed.

And in the case of Lyles vs. Barnes, 40 Miss., 608, (also

cited) it is expressly decided that an appeal generally could be tried *de novo*, but that the statutes of Mississippi require them to be tried on the record.

And, in truth, the King case repudiates the whole theory of the decision in the Henderson case, and the reasoning in the Baker case, for it emphatically decides that though the Circuit Court has original jurisdiction, it could not try *de novo*, because on appeal its appellate jurisdiction only was invoked.

2. That the idea of an appeal pre-supposes error in the court below, and that a trial *de novo* in the superior court is had at the volition of the party losing in the inferior court without any showing of error there. But this is assuming the very point in controversy, and we think that we have shown that it is an assumption contrary to principle and authority. To add another citation, Powell (Appellate Proceedings, p. 359, §2,) says that " here [in America] by means of the appeal a trial *de novo* is obtained at the volition of the party, without assigning any cause for it." The assumption is natural to a lawyer whose appellate practice has been exclusively in the Supreme Courts, but cannot withstand the light of the history of inferior appellate courts.

3. That the judgment of the inferior court is *res adjudicata*, and must stand until reversed by due course of appellate proceedings. This also is begging the question for it brings us back to the point of this discussion as to whether a trial *de novo* is or not an appellate proceeding.

Besides, the doctrine of *res adjudicata* is merely the doctrine of estoppel, dependent upon the finality of the judgment until reversed, and it is for the Legislature to say (within constitutional limits) whether it shall be subject to reversal in one way or another.

We submit that we have accomplished our task, and demonstrated that the Legislature was authorized by the Constitution of 1868 to provide for a trial *de novo* in a Circuit Court upon appeal from the County Judge in an action by a landlord against a delinquent tenant, and that the case of State *ex rel.* vs. King, 20 Fla., should be overruled.

RANEY, C. J. : This is an application for a writ of prohibition.

The question before us is whether under the Constitution of 1868, as amended in 1875, the seventh section of the delinquent tenant act of 1881. (chapter 3243) is unconstitutional in so far as it authorizes a trial *de novo* in the Circuit Court, of a case appealed to after trial by a County Judge. It was held by this court in 1884, in the case of State *ex rel.* vs. King, Circuit Judge, 20 Fla., 399, that the provision in question was unconstitutional.

Section 10 of Article X, the Judiciary Article, of the Constitution of 1868, as amended in 1875, provides, after giving County Judges the civil and criminal jurisdiction of Justices of the Peace, that they " may also have jurisdiction of such proceedings relating to the forcibly entry or unlawful detention of lands and tenements, subject to the appellate jurisdiction of the Circuit Court, as may be provided by law."

Section 8 of the same article provides that the Circuit Courts shall have " original jurisdiction * * * of the action of forcible entry and unlawful detainer, and of actions involving the titles or the right of possession of real estate ;" and that " they shall have appellate jurisdiction of matters pertaining to the probate jurisdiction and of the estates and interests of minors in the County Courts and of such other matters as may be provided by law."

The fifth article of the Constitution of 1838 provided

*inter alia,* as follows : The Supreme Court, except in cases otherwise directed by that instrument, shall have appellate jurisdiction only, which shall be co-extensive with the State, under such restrictions and regulations not repugnant to the Constitution as may from time to time be prescribed by law (section 2.) The Circuit Court shall have original jurisdiction in all matters, civil and criminal, within this State not otherwise excepted in this Constitution (section 6.) It also provided (section 10) for Justices of the Peace, and that they should " possess such jurisdiction as may be prescribed by law ; and that in cases tried before a Justice of the Peace the right of appeal shall be secured under such rules and regulations as may be prescribed by law."

The Legislature having provided for appeals from trials by Justices of the Peace to the Circuit Court, and that on any such appeal being taken the case should be tried in the latter court " anew upon its merits," and without requiring written pleadings, it was contended in *ex parte* Henderson, 6 Fla., 279, that the Circuit Court had no power in view of the above grant of powers made by section 6 of Article V of the Constitution to entertain or try a case so appealed, but that the duty belonged to the Supreme Court. The decision of the court was that " the right of appeal " in cases tried before Justices of the Peace, under the above tenth section of the fifth article of that Constitution, meant (p. 291) appeals involving trials *de novo* or anew upon the merits, which had been in use in the Territory under Legislative enactments, as far back as 1822. Of such a trial on appeal it is said, pp. 288, 289 : " We do not concur in the opinion that the case of an appeal from a Justice of the Peace is a case of appellate jurisdiction in the sense in which this term is used in the Constitution conferring

it on this (the Supreme) Court. The fact is, it is of a mixed character, having but one ingredient of appellate power in that it has its origin in the inferior court, whilst in all other respects it is and from its commencement, as well by the Legislature as the courts, has been treated and regarded as if originally instituted in the Circuit Court, with the single exception that written pleadings are not required. The case is directed to be tried anew in the Circuit Court, and it is to be continued after judgment, until final execution. This undoubtedly is the exercise of original jurisdiction. There is no revision and correction of error of law merely, no remitting of the case below for further trial." Again, on p. 291: " Considered in this light we feel no difficulty in regarding the Constitution as having allusion to these statutes and designing their continuance, and in holding the case to be one of original jurisdiction."

Assimilating the powers of the Circuit Court to those of the King's Bench in its general supervising control of inferior tribunals it was, however, also said that even if the power was appellate in its nature, it could, nevertheless, be exercised.

Considering the fact that the original jurisdiction of the Circuit Court was concurrent with that of Justices of the Peace in any case involving not more than fifty dollars, McMillan & Campbell vs. Savage, 6 Fla., 748, it is clear that an appeal under the above system was nothing more than a transfer of the cause after trial to another tribunal where it was retried without regard to either the result of or to any proceeding in, the former trial, and the second trial was the exercise of original, and not of any supervisory jurisdiction. The case was carried to the Circuit Court'

for it to try as an original cause the same as if it had orig-inated there.

Looking at the Constitution of 1865 we find nothing in-dicating any different intent, or different effect from that indicated by the former instrument. Article V, sections 5, 9.

The Constitution of 1868, by section 8 of Article VII, gave to the Circuit Court original jurisdiction of the ac-tion of forcible entry and unlawful detainer. Its appellate jurisdiction as prescribed by this section does not include such actions. By section 11 of the same article the County Courts " may have co-extensive jurisdiction with the Cir-cuit Courts in cases of forcible entry and unlawful deten-tion of real estate, subject to appeal to the Circuit Court."

The doctrine of State *ex rel.* vs. King, Circuit Judge, *su-pra*, is that although the Circuit Court has original juris-diction of the proceedings in question, its power in cases appealed from the County Judge is appellate only, and that it could not exercise original jurisdiction; citing State vs. Baker, 19 Fla., 19, and State vs. Vann, *Ibid*, 29, where it was held that on an appeal to a Circuit Court from a judg-ment of a Justice of the Peace a trial *de novo* is the exer-cise of original jurisdiction, and that the statute providing for such trials on such appeals was unconstitutional.

We have considered the question presented carefully and are unable to conclude that there is error in the conclusion reached by our predecessors in the case against Judge King It is clear that the Constitution of 1868, as amended in 1875, gave to the Circuit Court both an original and an appellate jurisdiction in cases of the character of the one before us, and we are unable to reach the conclusion that the language used in it, as shown at the outset of this opinion, does not exclude the idea that the appeal should

be to the original jurisdiction of that court. Its natural meaning is that it should be to the appellate jurisdiction, and not to the same jurisdiction as that by which it could try the case as a cause originally instituted in it. Under the Constitution of 1838 it was necessarily an appeal to the original jurisdiction of the Circuit Court. Though called an appeal or anything else, in trying the case the Circuit Court did so by the use of its original jurisdiction, put to such a use by the Legislature. It had no real appellate jurisdiction, as distinguished from original, to be used; and we may remark here that the Circuit Court, under the Constitution of 1868, as amended in 1875, did not have the extensive powers supervisory of and controlling interior tribunals, conceded to have been in the Circuit Court under the organic law of 1838, by the opinion in Ex-parte Henderson. They were chiefly if not exclusively in the Supreme Court. Section 5, Article VI; Singer Manufacturing Company, vs. Spratt, 20 Fla., 122; Sherlock vs. City of Jacksonville, 17 Fla., 93; State vs. Gleason, 12 Fla., 190.

Having in a preceding section given the original jurisdiction indicated, to the Circuit Court, if it had not been the intention to exclude a retrial in the exercise of such jurisdiction the language quoted from section ten of the amendments of 1875 would not have been used, or, in other words, if it had intended to permit a retrial by such original jurisdiction the language referred to would not have been adopted.

The jurisdiction to try a proceeding relating to the forcible entry or unlawful detainer of lands, is a law jurisdiction; and at law, barring the legislation as to trials *de novo*, such a thing as the introduction of new evidence has not been permitted on either a writ of error, or on our law appeal. The same is true of appeals in equity. State courts

have no admiralty jurisdiction, and the peculiar practice in that branch of jurisprudence cannot be invoked as in point.

The point before us was not made in any of the cases cited by counsel for respondents, except in that of Cavanaugh vs. Wright, 2 Nev., 166, and it does not change our convictions.

The demurrer to the suggestion will be overruled, with leave to the respondents to plead within twenty days.

It will be so ordered.