## STATE v. JOHNSON

No. 6283.　Decided July 3, 1941.　(114 P. 2d 1034.)

318

*Joseph Chez,* Atty Gen., and *George D. Preston,* Dist. Atty., of Logan, for appellant.

*Newell G. Daines* and *Jesse P. Rich,* both of Logan, for respondent.

LARSON, Justice.

The district attorney filed a complaint in the District Court of Cache County charging defendant with injury to personal property, specifically that the defendant had injured a cow of the complaining witness by altering and defacing the brand. Defendant demurred and alleged as one ground, among others, that the court lacked jurisdiction of the person of the defendant or the subject matter of the action. This demurrer was overruled. The case was tried, the defendant was convicted, and a motion was made in arrest of judgment on the same grounds as those pleaded in the demurrer. This motion was granted by the District Court and the defendant was released because the complaint should have been filed originally in the City Court of Logan.

This presents the question of the construction of Article VIII, Section 7 of the State Constitution, which as far as involved here reads:

"The District Court shall have *original* jurisdiction in all matters civil and criminal, not excepted in this Constitution, and not prohibited by law; *appellate* jurisdiction from all inferior courts and tribunals, and a supervisory control of the same. * * *" (Italics added.)

Does this provision mean that any civil or criminal matter not expressly prohibited by law may be commenced, in the first instance, in the district court regardless of statutory provisions providing another forum where certain cases must be commenced and may then come to the district court by appeal? In other words what is the meaning of the term *original jurisdiction*? Does it refer to the locus or situs of the initial instigation of a legal controversy or does it refer to the nature of the adjudicative power of the tribunal? Does it refer to the tribunal where the process invoking juridical action must emanate or be filed in the

first instance; or does it define the form and extent of the juridical power? We have no hesitancy in saying it is the latter.

The constitution is a frame work erected by sovereign people setting up a form of government whereby and through which they may act collectively in matters of common concern, wherein from their nature individual action would not be orderly or effective, matters in which all have a common interest but not necessarily a common point of view, remedy or solution. The Utah Constitution declares it was ordained in order to secure and perpetuate the principles of free government,—a government of free men. The first thing the framers did was set up a Declaration of Rights to make clear that the government to be set up, the state, was the creation, creature, and servant of the people and not their master. In Article V it vests all powers of the government in three distinct and independent departments. The next three articles define and set out the powers vested in each department. Article VIII vests the whole judicial power of the government in the courts therein enumerated.

The Supreme Court is given *original jurisdiction* as to certain specified writs, and in other cases *appellate jurisdiction* only. The District Court is given original *jurisdiction* in all matters, civil and criminal, not prohibited by law; *appellate jurisdiction* from all inferior courts and tribunals; and also *power to issue writs* of habeas corpus, etc. It will at once be noted that *original jurisdiction* is used here in contradistinction to *appellate jurisdiction*. That jurisdiction which it not *appellate* is *original*. Appellate jurisdiction is the jurisdiction to review the decision or judgment of an inferior tribunal, upon the record made in that tribunal, and to affirm, reverse or modify such dicision; judgment, or decree. Story in his splendid work on the Constitution, Section 1761, 5th Ed. says:

"In the first place, it may not be without use to ascertain what is here meant by appellate jurisdiction, and what is the mode in which

it may be exercised. The essential criterion of appellate jurisdiction is, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. In reference to judicial tribunals, an appellate jurisdiction, therefore, necessarily implies that the subject-matter has been already instituted in and acted upon by some other court, whose judgment or proceedings are to be revised."

Said the Supreme Court of North Dakota in *Re Peterson's Estate,* 22 N. D. 480, 134 N. W. 751, at page 763:

"Appellate jurisdiction cannot create a cause. It must be first created and adjudicated by another judicial tribunal. Those facts existing, the appellate court may exercise its jurisdiction in any form the Legislature may prescribe. The Legislature may require the appellate court to review the acts and render final judgment. If in so doing it exercise some of the functions of a court of original jurisdiction, we answer that there is neither constitutional nor legal reason why it should not."

And in *Marbury* v. *Madison,* 1 Cranch 137, 175, 5 U. S. 137, 2 L. Ed. 60, Chief Justice Marshall said:

"When an instrument organizing fundamentally a judicial system, divides it into one supreme, and so many inferior courts as the legislature may ordain and establish; then enumerates its powers, and proceeds so far to distribute them, as to define the jurisdiction of the supreme court by declaring the cases in which it shall take original jurisdiction, and that in others it shall take appellate jurisdiction; the plain import of the words seems to be, that in one class of cases its jurisdiction is original ,and not appellate; in the other it is appellate, and not original. * * * It is the essential criterion of appellate jurisdiction, that it *revises and corrects the proceedings in a cause already instituted, and does not create that cause."* (Italics added.)

See also *Reed* v. *McCormick,* 4 Cal. 342. In *Crull* v. *Keener,* 17 Ill. 246, the court said:

"This court has only appellate jurisdiction, except in certain specified cases. * * * The word *appellate* in the constitution is used in contradistinction to *original."* (Italics added.)

In *Vail* v. *Dinning,* 44 Mo. 210, the court declared that appellate jurisdiction was a supervisory power, and con-

templated some action by an inferior tribunal which the court could re-examine and reverse or affirm. It exists only to correct errors committed by an inferior jurisdiction. There must be a "judgment of an inferior tribunal to re-examine, revise, or reverse."

The judgment of the appellate court however is not self-executing. It is certified or remitted back to the court from which the appeal was taken, for execution of the judgment. *In re Peterson's Estate,* supra. Original jurisdiction as contradistinguished is the right to hear the cause, to make its own determination of the issues from the evidence as submitted directly by the witnesses; or of the law as presented, uninfluenced or unconcerned or limited by any prior determination, or the action of any other court juridically determining the same controversy. Original jurisdiction as here used means the right of the court to make its own record, its own finding and determination. An original determination is one not founded upon one previously made. It is original in the sense that it stands alone upon its own base, not the outgrowth of some other. In *State ex rel.* v. *McClellan,* 25 Fla. 88, 5 So. 600, 601, the Florida Court held that the purpose and effect of a trial de novo on appeal was the invoking of original, as distinguished from appellate, jurisdiction. The Florida Constitution contained the same provision as ours. The Court said:

"Of such a trial on appeal it is said ([in *Ex Parte Henderson,* 6 Fla. 279] pages 288, 289): 'We do not concur in the opinion that the case of an appeal from a justice of the peace is a case of appellate jurisdiction in the sense in which this term is used in the constitution conferring it on this (the supreme) court. The fact is, it is of a mixed character, having but one ingredient of appellate power in that it has its origin in the inferior court, while in all other respects it is and from its commencement, as well by the legislature as the courts, has been treated and regarded as if originally instituted in the circuit court, with the single exception that written pleadings are not required. The case is directed to be tried anew in the circuit court, and it is to be continued after judgment, until final execution. This undoubtedly is the exercise of original

jurisdiction. There is no revision and correction of error of law merely, no remitting of the case below for further trial.'

\*        \*        \*

"Considering the fact that the original jurisdiction of the circuit court was concurrent with that of justices of the peace in any case involving not more than $50 (*McMillan* v. *Savage*, 6 Fla. 748), it is clear that an appeal under the above system was nothing more than a transfer of the cause after trial to another tribunal, where it was retried without regard to either the result of, or to any proceeding in, the former trial; and the second trial was the exercise of original, and not of any supervisory, jurisdiction. The case was carried to the circuit court for it to try as an original cause the same as if it had originated there."

And discussing a similar situation in *Ex parte Henderson*, 6 Fla. 279, the court said on page 291 that under the Constitution trial de novo on appeal from justice's courts was the exercise of the original jurisdiction mentioned in the Constitution. In *State ex rel.* v. *Baker*, 19 Fla. 19, we read:

"In many of the States where the jurisdiction of the courts is not so sharply defined, it is provided that a new trial may be had in the Circuit Court on appeal from judgments of inferior courts. It was so in this State under the former Constitution which gave Circuit Courts original jurisdiction of matters without regard to the amount involved, and having such original jurisdiction, it could try de novo causes brought before it by means of the statutory appeals from Justice's courts in the same manner as causes commenced by summons."

The Kansas Court in passing on this same question in *Re Burnette*, 73 Kan. 609, 85 P. 575, 577, says:

"The jurisdiction to consider and decide causes de novo is in its essence original. The manner in which a case reaches the higher court is not the test. Jurisdiction being the power to hear and determine, the nature of the functions to be exercised controls, whether they are brought into activity by primary process or by removal from an inferior tribunal. Upon a trial de novo the power of an appellate court in dealing with the pleadings and the evidence, in the application of the law and in the rendition of judgment according to the right of the case, all independent of the action of the lower court, is no different from what it would be if the case were begun

there originally, and hence is not 'appellate,' within the meaning of laws creating jurisdiction. *Lacy* v. *Williams*, 27 Mo. 280; *County of St. Louis* v. *Sparks*, 11 Mo. [201] 203.

\* \* \*

" 'Appellate' pertains to the judicial review of adjudications. 'Appellate jurisdiction' is the power to take cognizance of and review proceedings had in an inferior court, irrespective of the manner in which they are brought up, whether by appeal, or by writ of error. \* \* \* The case of *Ex parte Henderson*, in 6 Fla. 279, decided that the trial de novo of a cause coming to the circuit court on appeal from a justice's court was the exercise of original rather than appellate jurisdiction."

The North Dakota Court in *State* v. *Archibald*, 5 N. D. 359, 370, 66 N. W. 234, held that a forum for litigation of private rights in which the judgment of the court may be invoked directly is one of original jurisdiction whereas one that only passes upon the judgment of an inferior court is appellate.

Original jurisdiction as used in the constitutional provision means an independent jurisdiction, one not based upon or limited to review of another court's judgment or proceedings. *Wheeler* v. *Northern Colo. Irrig. Co.*, 9 Colo. 248, 250, 11 P. 103.

Each judgment of the district court when first entered after trial is an original judgment, even though the cause may have been previously tried and a new trial granted. Each hearing which starts from "scratch" and permits the parties to produce all available proper evidence on all of the issues is an original hearing before the court,—one unfettered, unlimited, or unconfined by the hearing had before any other court or tribunal. So here the Constitution provides that the District Court has jurisdiction to frame its own issues, conduct its own hearing, and make its own determination in all cases civil and criminal, not prohibited by law. Parties litigant are thus assured the right to a trial upon the merits in the District Court when their cause reaches it in the manner provided by law.

The right of the District Court to hear and determine for itself, upon its own record, any cause which is lawfully before the court cannot be denied because the Constitution grants it the jurisdiction to make an original determination.

We determine then that the constitutional provision does not mean that regardless of statutory rules, practice, and procedure, any civil or criminal matter not expressly prohibited by law, may be commenced in the District Court. There being no constitutional inhibitions, the legislature may define and prescribe the forum in which actions may or must be commenced, and the procedure necessary to pass from one court to another. Although there are certain constitutional limitations on the exercise of some powers by certain courts, the framers of the Constitution wisely refrain from conferring exclusive original jurisdiction upon any of them, vesting original jurisdiction in all courts inferior to the Supreme Court, to be appointed and exercised as the legislature may direct. *Mill* v. *Brown,* 31 Utah 473, 88 P. 609, 120 Am. St. Rep. 935.

Our question then resolves itself into a matter of procedure,—in what forum should an action such as this be commenced? The statutes which may be helpful, all in R. S. U. 1933, are:

Section 20-3-4, being an exact reproduction of the constitutional provision quoted at the beginning of this opinion relating to jurisdiction of District Courts; Section 20-5-4, quoted infra, setting forth the jurisdiction of justices' courts; Section 105-1-2; Section 105-1-4; Section 105-10-1, defining a complaint; 105-10-4, defining a magistrate; Sections 105-12-9, 102-15-1, 105-15-17; 105-15-19; 105-15-32, prescribing procedure when offense not triable by magistrate; Sections 105-12-18, 105-57-6, 105-57-10, 105-57-11, and 105-57-32. These sections provide for and control the procedure in justices' courts; to hold a defendant for trial in the District Court for indictable offenses; and for trial before the justice of the peace for non-indictable misdemeanors. A perusal of these sections reveals a well-or-

ganized, streamlined, procedure for the trial of criminal causes, so planned as to give symmetry to the whole, prevent overlapping and conflicts, expedite the trial and hearing of criminal matters, and relieve the higher courts of the necessity of occupying their time, needed on matters of larger moment, on the more trifling or simple actions, and yet safeguard all legal rights by assuring the parties full hearing before a court of general jurisdiction and of record. Of all phases of public business and interest, the judicial service should be orderly streamlined and symmetrical, and not subject to juggling, shuffling or frequent changes. This was the evident intent of the framers of the Constitution in writing Article VIII setting up the judicial department consisting of courts of various grades and powers, trial and appellate, and providing for the orderly moving of causes from one to another, and providing supervisory control of lower courts and tribunals.

In directing the organization of the judiciary department it was the object of the convention to provide for the whole people of the State, through the several judicial tribunals, the most free, easy, cheap, speedy and convenient administration of justice. So various tribunals of different grades were ordained and one or more of them were established in every county and settlement in the State. Jurisdiction was conferred upon each of them according to their grade and dignity, in such manner that the whole judicial power was vested in one or another of the courts or justices of the peace. With certain confines fixed by the Constitution the legislature was authorized to allot and apportion the exercise of this jurisdiction, so as to avoid conflicts of authority, and establish a regular gradation of powers, each having a control and revising authority over inferior ones; and produce a harmonious action between the several branches of the whole system. It follows therefore that such construction must be put upon the powers which are conferred, and the restrictions which are imposed upon each tribunal, as is most consonant

to the general design and will be most effectual in enforcing and carrying into effect their expressed will.

A power to constitute courts is a power to prescribe its powers and the mode of trial, and consequently if nothing is said in the Constitution to the contrary, the legislature would be at liberty to prescribe what cases should be tried therein. The specification of an obligation that ▮▮▮ all criminal cases may be tried in the District Court does not abridge the power of the legislature to provide that some must be commenced and first tried in another tribunal. The legislature may generally prescribe the methods or means by which the jurisdiction of the courts may be invoked in the absence of constitutional inhibitions. As long as reasonable provision is made by which any criminal matter may reach and be tried on its merits in the District Court, it is well to observe the statutory provisions and practice, and not mar the symmetry of the set-up of the whole judicial department of the State. Do not confuse jurisdiction with venue.

Section 20-5-4, R. S. U. 1933, provides as follows:

"Justices' courts have jurisdiction of the following public offenses committed within the respective counties in which such courts are established:

\* \* \*

"(3) Breaches of the peace, committing a willful injury to property, and all misdemeanors punishable by a fine less than $300 or by imprisonment in the county jail or municipal prison not exceeding six months, or by both such fine and imprisonment."

By giving the inferior courts jurisdiction of specified classes of cases the legislature did not limit the jurisdiction of the district courts, but conditions precedent are interposed to the exercise of such jurisdiction. They may ultimately have the question tried before them ▮▮▮ on appeal, and a decision by a district court in a case brought before it from a justice of the peace or city court is final. This really involves a question of venue rather than

jurisdiction. The higher court has the power to hear the matter in controversy but the inferior court is the proper one to first take cognizance of the matter. If, however, there is not a qualified inferior tribunal to hear the cause, upon proper showing of this fact the district court will exercise its inherent power and assume jurisdiction over the cause, since the matter may be certified to the district court. Section 20-4-31, R. S. U. 1933.

Although the district courts are courts of general jurisdiction there are statutory provisions covering the method by which the courts' jurisdiction may be invoked. Section 105-1-4, R. S. U. 1933, provides:

"Every public offense must be prosecuted by information after examination and commitment by a magistrate unless the examination is waived by the accused with the consent of the state, or by indictment, with or without such examination and commitment, except:

\*　　　\*　　　\*

"(3) Offenses triable in city, justices' and police courts."

And Section 105-16-1, R. S. U. reads as follows:

"All public offenses triable in the district courts, *except cases appealed* from justices' and city courts, must be prosecuted by information or indictment, except as provided in chapter 7 of this title." (Italics added.)

Since the legislature has laid down a certain procedure for invoking the jurisdiction of the district courts this procedure must be followed. It is similar to any other judicial proceedings. For example, definite steps must be taken to perfect an appeal to the Supreme Court and ▮▮▮▮ until these steps are taken the cause is not before the court for review. In the instant case the district attorney filed a complaint in the district court. This was improper because by the statute quoted above all criminal matters in the district courts must be prosecuted by information or indictment except misdemeanor cases (a) certified to the District Court under the provisions of Section 20-4-31, and

Chapter 7 of Title 105, R. S. U. 1933, and (b) cases coming to the District Court on Appeal from an inferior court.

In *Jardine* v. *Harris,* 63 Utah 560, 227 P. 1029, the defendant was charged with assult and battery in the city court and by stipulation of the parties the cause was transferred to the district court. Defendant was convicted and the question of the court's jurisdiction was raised in the Supreme Court. This court held that in view of the stipulation of the parties agreeing to the trial being held in the district court the only questions to be decided were: 1. Did the court have jurisdiction of the subject matter? and 2. Did the stipulation and appearance of the defendant in the district court confer jurisdiction of the person? It was determined that the district court had jurisdiction of the subject matter, and likewise acquired jurisdiction of the person of the defendant since he had not only stipulated that the case might be transferred to the district court, but had appeared in person, accompanied by his attorney, and had pleaded "not guilty" without raising any objection to the jurisdiction of the court. So this court denied defendant's application for an annulment of the proceedings held in the district court, limiting its decision concerning the jurisdiction of the lower court to the two questions raised.

In *State* v. *Ferguson,* 83 Utah 357, 28 P. 2d 175, 177, the defendant was charged by information filed in the district court with knowingly having in her possession intoxicating liquor. She was convicted and appealed. The prosecution intended to plead a charge of being a persistent violator of the liquor law, which is a felony, but actually only alleged the misdemeanor. This court held that the offense charged was one that was clearly triable before the justice of the peace who issued the warrant of arrest and who made the order committing the defendant under bond to answer to the charge in the district court. The court says:

"Under our statutes the justice of the peace had no power or authority to commit the defendant to bail to answer for a mere misdemeanor, but having done so it was exercising a power beyond the

scope of his authority, and the district court, acting as a trial judge in hearing the case, acted beyond its authority."

The judgment of conviction was reversed and the cause was remanded to the district court with directions to dismiss the action and remit the record to the justice of the peace. Justice Elias Hansen in a concurring opinion says:

"As our law does not sanction the prosecution by information of a misdemeanor which is triable before a justice of the peace, it follows that the district attorney was not authorized to inform against the defendant for the offense charged in the information, and that the district court was without jurisdiction to try the accused for the offense charged in the information which was filed in this cause. * * *

"The plain language of our Constitution grants to every person convicted of a crime the right to appeal. In criminal cases triable before a justice of the peace the appeal is had to the district court, and its decision 'shall be final except in cases involving the validity or constitutionality of a statute.' If a misdemeanor which is triable in a justice's court may be originally tried in the district court upon an information, then and in such case some of the provisions of our State Constitution and our Code of Criminal Procedure may be disregarded. Thus, if the same method of procedure may be followed in a prosecution of a person charged with a misdemeanor triable before a justice of the peace as is followed in the prosecution of a person charged with a felony or an indictable misdemeanor, then and in such case confusion must follow. This court may be called upon to review the record on appeal in some cases involving misdemeanor triable before a justice of the peace, while in other of such cases the decision of the district court will be final. If such a practice be approved, a justice of the peace may, as suits his fancy, either proceed to try or bind over to the district court for trial a person charged with a misdemeanor triable before him. To so construe the language of our State Constitution and Code of Criminal Procedure is, in my opinion, without justification."

And Mr. Justice Moffat in his concurring opinion in the same case says:

"The question in the instant case is not one of jurisdiction of the subject-matter of the offense classified as misdemeanors; but it is one of procedure. The proper procedure not having been pursued to vest jurisdiction of the defendant in the district court to try her for the offense attempted to be charged, the cause should have been remanded to the justice's court either to try the defendant upon the

offense which the complaint actually charged, or if the facts warranted to amend the complaint to charge the offense in such form and with such allegations as would be supported by the proof."

In *State* v. *Telford,* 93 Utah 228, 72 P. 2d 626, 627, a complaint was filed in the city court charging possession of intoxicating liquor. Defendant moved for a change of venue to some justice of the peace in Cache County, "or to certify the records and files of this court to the District Court of the First Judicial District in and for Cache County, State of Utah, and said defendant hereby waives any statutory requirements or technicalities which may arise by reason of the same being certified to the District Court." The case was certified to the District Court, and the defendant was tried and convicted. The case was appealed to this court. It was held that the district court had jurisdiction of the subject matter but stated that the jurisdiction was not properly invoked. We quote from that opinion the views expressed on this point,

"The district court should not have proceeded with this case. A tribunal may have jurisdiction of a subject matter but the right to proceed under that jurisdiction may depend on a condition precedent. * * *

"There are many cases where courts have jurisdiction of a subject matter but that jurisdiction must be invoked according to a certain procedure. * * *

"In the case of misdemeanors, the jurisdiction of the district court can be invoked in two ways only: First, by appeal; second, if it appears by the certificate that there is no justice of the peace in the county qualified to try the case. The city judge, justice of the peace ex officio, certified the case to the district court, not on finding that there were not other justices of the peace who might try the case, granted he disqualified himself, but because of a motion or request of defendant not objected to by the county attorney."

The decision in that case was based on an estoppel. Defendant agreed to the transfer to the district court so this court held that he was estopped from taking advantage of the point that the jurisdiction of the district court was not properly invoked. He cannot question the procedure in-

volved in this district court's assuming jurisdiction of the matter in controversy. The court further says:

"The district court itself should refuse to proceed if the certificate shows it is not an appeal, or that it is not shown that there are no justices of the peace in the county qualified to try the case. It is a case in which mandamus would not lie to make it proceed or take cognizance and in which prohibition might lie to prevent it from taking jurisdiction, by a party not consenting to the jurisdiction. If the district court does proceed where it is shown that the matter was improperly transferred, certainly the party requesting that it should so proceed cannot question what he consented to and requested."

Since the record in that case showed there was not a certificate showing the disqualification of the justices of the peace, the status of the matter in the district court was held to be that of a case on appeal. It was so decided since defendant could not question the procedure and had expressly waived "any statutory requirements or technicalities which may arise by reason of the same being certified to the District Court." So the appeal was dismissed because an appeal does not lie to this court after a final hearing on appeal in the district court.

It appears therefore that the proper venue for the commencement of an action for a non-indictable misdemeanor has been laid in the justice's court or the city court. While the District Court has general jurisdiction ▮▮▮ in all criminal matters the proper procedure in misdemeanor cases as prescribed by statute is to commence the action in the city or justice's court. That is the form, process, and procedure prescribed by statute for bringing into operation by appeal the action of the district court in such cases. The statute having laid the initial venue of misdemeanor cases in the city or justice's court, the parties have a legal right to insist that the action proceed in the proper venue. In cases in personam, the question of venue may be waived. It is a right personal to the defendant to have his cause tried in the court of proper venue, but if he willingly submits the matter to a court

having jurisdiction of the subject matter of the action he is bound by the verdict or the judgment. Objections to venue in cases in personam must be raised or will be held to have been waived. "The right to apply for a change of venue is waived by failure to apply therefor at the time and in the manner prescribed by law." 67 C. J. 219; 27 R. C. L. 819. "It may be waived by certain acts of participation in the proceedings, or by filing a demurrer." 67 C. J. 220. "To be effective an objection to the venue must be seasonably made or it will be waived." It "must be made at, or before filing a demurrer, or answering to the merits." 67 C. J. 89; 27 R. C. L. 784. It has been held that the objection may be made at the trial but not after the introduction of evidence, and it is too late after verdict or judgment. *Howland* v. *Sheriff of Queens County*, 7 N. Y. Super. Ct. 219; *Draper* v. *Kirkland*, 1 Head, Tenn., 260; *Howe* v. *Hatley*, 186 Ark. 366, 54 S. W. 2d 64; *Newcomer* v. *Sheppard*, 51 Okl. 335, 152 P. 66; *Johnston* v. *Wadsworth*, 24 Or. 494, 34 P. 13; *State* v. *Lehman*, 182 Mo. 424, 81 S. W. 1118, 66 L. R. A. 490, 103 Am. St. Rep. 670.

In the case at bar, defendant did not raise the question of venue, neither before trial nor after trial. Before trial he filed a motion to quash and a demurrer but by neither did he raise a question of venue, or seek a change to the proper venue. When it appeared to the court that the action was one for a non-indictable misdemeanor, the proper initiatory venue of which was in the justice's court, if no objection to venue or motion for a change of venue was made, the court on its own motion should have halted the proceedings, dismissed the action and ordered that a complaint be filed in the justice's court. After trial defendant made a motion in arrest of judgment, which motion the court granted. This motion did not properly raise a question of venue. It was based upon the ground that the court lacked jurisdiction of the subject matter and of the person of the defendant, because the action should have been brought in the justice's court. The trial court upheld

that view and dismissed the action. The matters presented did not go to the jurisdiction but only venue. The court being one of general jurisdiction had jurisdiction of the subject matter of misdemeanors, and also of the person of defendant, he having been brought in by proper warrant of arrest, being present in court and participating in the proceedings. Not having raised the question of venue, defendant waived it. The court was in error in arresting judgment and discharging the defendant. Since the defendant has been discharged by the court he cannot again be tried for this offense and all this court can do in such case is settle the law involved.

MOFFAT, C. J., and McDONOUGH, J., concur.

WOLFE, Justice.

I concur. The opinion very clearly develops the thesis that "original jurisdiction" as used in the Constitution does not mean that an action *must* be originally brought in the court having original jurisdiction, nor that there is a right originally to initiate it in that court. The word "original" expresses an adjudicative power of the court to function originally in regard to the litigation, independently of another tribunal, as it could have done if originally brought in that court and not as a court reviewing the action of another tribunal. I think the distinction sound and the only one workable under the various provisions of our constitution.

The opinion further concludes that since the district court had general jurisdiction to hear the case anew and function as to the issue and judgment independently of the first court's action and judgment, although its action was conditioned on an initial trial in the other prescribed court and in that sense derivative, the whole matter resolved itself primarily into a question of venue. The district court, if initial trial had not taken place in a designated lower tribunal, should, except in the cases under Sec. 20-3-4, R.

S. U. 1933, have dismissed the proceedings and ordered complaint filed in the proper court. But since it was primarily a matter of venue such failure on the part of the court left the defendant himself free to move for the change—a matter which he could waive. The estoppel on which the decision in *State* v. *Telford,* 93 Utah 228, 72 P. 2d 626, was bottomed seems to be another way of stating the same thing. And on the basis of waiver the cases of *Jardine* v. *Harris,* 63 Utah 560, 227 P. 1029; *State* v. *Ferguson,* 83 Utah 357, 28 P. 175 and the Telford case are reconcilable.

PRATT, Justice.

I concur in the result only.

The jurisdiction of the District Court is determined by section 7 of Article 8 of the Constitution of this state. That section reads:

"The District Court shall have original jurisdiction in all matters civil and criminal, not excepted in this Constitution, and not prohibited by law; appellate jurisdiction from all inferior courts and tribunals, and a supervisory control of the same. The District Courts or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition and other writs necessary to carry into effect their orders, judgments and decrees, and to give them a general control over inferior courts and tribunals within their respective jurisdictions."

Our legislature has no power to restrict that jurisdiction in any way whatsoever.

The jurisdiction of the Justice of the Peace is determined by section 8 of the same article. This section reads: "The Legislature shall determine the number of justices of the peace to be elected and shall fix by law their powers, duties and compensation. The jurisdiction of justices of the peace shall be as now provided by law, but the Legislature may restrict the same."

Here the legislature is given power to restrict the jurisdiction. To "restrict" is to retain within bounds, to limit

(Webster). In other words the legislature may limit the free use of this jurisdiction such as to limit its territorial boundaries.

Our Constitution was adopted in 1896. At that time sections 3019 to 3023, Compiled Laws of Utah, 1888, were in effect and determined the jurisdiction of the Justices of the Peace. This jurisdiction was adopted by section 8 quoted above by the language:

"The jurisdiction of justices of the peace shall be as now provided by law * * *."

When our legislature enacted section 20-3-4, 20-5-2, and 20-5-4, R. S. U. 1933, which state the jurisdictions of the District Court and the Justices of the Peace, it merely recognized that those were the jurisdictions fixed by the Constitution—the latter two sections are almost identical with the sections of the 1888 laws to which reference is made above. Historically, then, there is no basis for believing that the legislature by enacting those sections of the Revised Statutes of Utah, 1933, had in mind any thought of matters of venue. They merely repeated what the Constitution had adopted. The legislature did not, and has no power to determine the jurisdiction of the Justice of the Peace.

Stress has been laid upon two other sections of our Revised Statutes—sections in the Code of Criminal Procedure. They are sections 105-1-4 and 105-16-1, R. S. U. 1933:

"Every public offense must be prosecuted by information after examination and commitment by a magistrate unless the examination is waived by the accused with the consent of the state, or by indictment, with or without such examination and commitment, except:

\* \* \*

"(3) Offenses triable in city, justices' and police courts." 105-16-1:

"All public offenses triable in the district courts, except cases appealed from justices' and city courts, must be prosecuted by information or indictment * * *."

Section 105-1-4 is under the general provisions of the Code of Criminal Procedure. The word "triable" in paragraph 3 thereof does not mean "which have been tried." It means that if the offense is one that lies within the jurisdiction of the Justice of the Peace, it is one that may be initiated —in whatever court it is initiated—without a preliminary hearing, and by an instrument other than the one designated by our code as an information. To what does this section conform? To section 13 of Article 1 of our Constitution which provides:

"Offenses heretofore required to be prosecuted by indictment, shall be prosecuted by information after examination and commitment by a magistrate   *   *   *."

That constitutional section recognizes that there were certain offenses which were not required to be prosecuted by indictment. They were those subject to prosecution before a Justice of the Peace. See sections 5305 and 5309, Compiled Laws of Utah, 1888. There is nothing in the wording of section 105-1-4 nor in section 13 of Article 1, upon which it is based, that implies venue as distince from jurisdiction. The question of where a particular action should be initiated is governed by the power of the court to act upon that particular kind of action—so far as this section of the Constitution is concerned.

Section 105-16-1, R. S. U. 1933, quoted above, is the only section from which an inference might be drawn in support of Mr. Justice LARSON'S theories. If we may properly infer from the wording of this section that it was intended that misdemeanors were not to be initiated in the District Court—this inference being the result of a belief that informations are used only after preliminary hearings upon felonies or indictable misdemeanors—then the legislature had modified the situation by enacting section 105-21-5 (Chapter 118), Laws of Utah, 1935, which by implication says that an information may be used for an offense in which there has been no preliminary hearings. In such

a case an oath must be taken to the information. This in effect makes the information a complaint. But the writer is of the opinion that section 105-16-1 was not passed with the thought of excluding misdemeanors from the District Court. It was passed merely as an effort to make uniform the procedure as to felonies and indictable misdemeanors, which the legislature contemplated would be the bulk of the trials before the District Court. It is a section enacted to conform to section 105-1-4 and to section 13 of Article 1 of the Constitution, both of which deal with felonies and indictable misdemeanors but not with misdemeanors.

Mr. Justice LARSON rather emphatically draws the line between appellate jurisdiction and original jurisdiction. He states:

"That jurisdiction which is not *appellate* is *original.*"

Thus they are mutually exclusive. He continues:

"Appellate jurisdiction is the jurisdiction to review the decision or judgment of an inferior tribunal upon the record made in that tribunal, and to affirm, reverse or modify such decision, judgment, or decree."

He continues later in his decision:

"Original jurisdiction as contradistinguished is the right to hear the cause, to make its own determination of the issues from the evidence as submitted directly by the witnesses; or of the law as presented, uninfluenced or unconcerned or limited by any prior determination, or the action of any other court juridicially determining the same controversy. Original jurisdiction as here used means the right of the court to make its own record, its own finding and determination."

Though those principles may be ever so meritorious, they are not applicable under the Constitution and the Code of this state.

For example: section 7, Article 8 of our Constitution (quoted above) gives the District Court "appellate jurisdiction from all inferior courts and tribunals." The Justice

of the Peace is an inferior court. An appeal from the Justice of the Peace to the District Court calls for a trial de novo (sections 105-57-43, criminal, and 104-77-4, civil). Upon a trial de novo the District Court makes its own record—its action thereon it within the definition of original jurisdiction as propounded by Mr. Justice LARSON. That original jurisdiction is not appellate jurisdiction—so states my associate. What then is the *appellate jurisdiction* exercised by the District Court over the judgments of the Justice of the Peace? May I again invite attention to the Compiled Laws of Utah, 1888. Section 3010, subd. 6, thereof speaks of the District Court's "appellate jurisdiction" over cases in the Justice of the Peace courts. I quote the section:

"Its appellate jurisdiction extends to all cases arising in probate or justices' courts; and to all other matters and cases wherein an appeal to it is or may be allowed by law."

An appeal from the justice court to the District Court called for a trial de novo then, as it does now (section 5384. s 95, C. L. U. 1888). Historically Mr. Justice LARSON'S interpretation of "appellate jurisdiction" is not supported in this state.

Another example of the confusion that may arise if we adopt, in this state, the principles proposed by Mr. Justice LARSON: Mr. X is tried for a misdemeanor before a justice of the Peace. He is found guilty. He takes the case to the District Court. It is tried again. He is found guilty. According to the principles proposed this second trial is the exercise of original jurisdiction —not appellate—by the District Court. It is the same as if the defendant were given a new trial before a court having concurrent jurisdiction. That being the case, here is defendant's dilemma: By section 9, Article 8 of our Constitution he is prohibited from going to the Supreme Court, except to question the validity or constitutionality of a statute; and by section 12, Article 1 of our Constitution he is entitled to an appeal

which he has not as yet had, if we interpret the District Court proceedings as does Mr. Justice LARSON.

May I suggest that we consider our Code upon appeals in the light of the discussions found in 4 C. J. S. Appeal and Error, pages 74, 79, and 81, §§ 12, 17, and 18. That is to say that we have two kinds of appeals in this state: the old civil law appeal where the case is tried anew; and an appeal which is in the nature of an extended form of writ of error, where the record facts may be reviewed as well as the questions of law. In each case the court to which the appeal is taken acquires only appellate jurisdiction. This conforms to many cases of this Supreme Court wherein the jurisdiction of the District Court on appeal has been limited as appellate jurisdiction and distinguished from the jurisdiction applicable if the proceeding has been initiated there.

If, as the writer believes it to be, the District Court jurisdiction on appeal from the Justice of the Peace is appellate and not original, then any contention that misdemeanors must be initiated before the Justice of the Peace as a matter of venue or as a condition precedent to hearing in the District Court must and should fall. The decisions of this Supreme Court heretofore rendered either deciding or intimating that a misdemeanor may not be initiated in the District Court should be overruled on that point.

In closing I add this: If the misdemeanor is initiated before the Justice of the Peace, defendant, by our Constitution being entitled to an appeal, may appeal to the District Court. He is not entitled to two appeals as the Constitution and the statutes limit him to that one. If the misdemeanor is initiated before the District Court he may satisfy his right to that one appeal by taking an appeal to this Supreme Court.

The lower court was in error.