UTAH DEPARTMENT OF BUSINESS REGULATION, DIVISION OF PUBLIC UTILITIES, BUSINESS TELEPHONE SYSTEMS, Intervenors, Plaintiffs,

v.

PUBLIC SERVICE COMMISSION of Utah; Milly O. Bernard, Chairman; Olof E. Zundel Commissioner; and Kenneth Rigtrup, Commissioner Mountain States Telephone & Telegraph Company, Defendants.

No. 15701.

Supreme Court of Utah.

Oct. 23, 1979.

Bruce P. Saypol of Cohn & Marks, Washington, D. C., David M. Bown, Salt Lake City, for intervenors, plaintiffs.

David E. Salisbury and J. Rand Hirschi of VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for defendants.

HALL, Justice:

This case arises on writ of certiorari from an order of the Public Service Commission of the State of Utah, pursuant to a petition by appellant Business Telephone Systems of Utah, Inc. (hereinafter "BTS"). BTS challenges a final report and order of the Commission which approved certain service tariffs proposed by the Mountain States Telephone & Telegraph Company (hereinafter "Mountain Bell"), a regional subsidiary of American Telephone and Telegraph (hereinafter "AT&T").

Mountain Bell is a certified public utility in the State of Utah, which enjoys monopoly status with regard to telecommunications services within this state. Prior to 1968, this monopoly status extended also to the furnishing of "terminal telephone equipment," which term embraces all types of standard consumer-operated telephone units, business exchange terminals, etc. Following a 1968 decision of the Federal Communications Commission,[1] it became unlawful for AT&T (or any of its regional subsidiaries) to penalize, in its tariff structure, the use of independently-manufactured terminal equipment on telecommunications services furnished by AT&T. Since that time, a market has emerged for the production and distribution of telephone terminal equipment. While this market has produced a number of competitors of Mountain Bell and other AT&T subsidiaries, their number and market power is relatively small to date.[2] Between 1968 and 1976, Mountain Bell offered the business terminal equipment known as the private branch exchange (PBX) system, on a month-to-month rental basis, similar to the leasing system used for simple residential telephone equipment, while its competitors offered sales of PBX equipment, together with long-term leases, which constituted substantially better terms than Mountain Bell could provide. As such, on September 1, 1976, Mountain Bell filed a petition with the Public Service Commission, outlining an alternative service tariff to the users of PBX equipment.

The Mountain Bell proposal, designated the Telalease system, is essentially a long-term leasing package offered to business customers for periods of three, five, seven, or ten years. Characterized by Mountain Bell as a two-tier leasing system, the proposed Telalease plan exacts a tariff composed of two parts. The first part, (tier A), consists of a set payment designed to recover the cost of fixed capital reflected in the unit or system leased to the customer. This amount is set at the beginning of the lease agreement and runs only for the fixed period of the lease, after which it terminates. The second portion, (tier B), reflects an additional 18 percent of the fixed cost of capital in the equipment held by the customer (in other words, the tier A payment), and also covers all ongoing expenses associated with that particular unit or system.

For purposes of calculating the amount due under the tier A portion of the proposed tariff, Mountain Bell has adopted an "equated cost of money" analysis for figur-

---

1. In the Matter of the Use of the Carter Phone Device, 13 F.C.C.2d 420 (1968).

2. The parties before us, by reason of differing definitions of the relevant commercial market, are in disagreement as to the percentage of market power enjoyed by Mountain Bell; Mountain Bell itself claims a market share of 89 percent, while BTS asserts that Mountain Bell enjoys a market share of 98 percent. For our purposes, the distinction is unimportant.

ing book investment value. This analysis considers the depreciation in value of a PBX system over the life of the system, and permits the user to make a tier A payment which takes that depreciation into account (a return to the investor being due only on the undepreciated value of the asset). The "book value" on which the user makes the tier A payment, consequently, averages out at about 62 percent of the asset's original worth. By the conclusion of the lease period, the total investment has been recovered.

In calculating the recurring, or incremental, costs of furnishing PBX service to its customers (which costs would be reflected in the tier B payment), Mountain Bell has adopted the so-called long-run incremental analysis (LRIA). The LRIA method begins not with the covering of costs involved in furnishing the service, but with the maximizing of profits (referred to as "contribution" in a utility setting) in the competitive PBX market. To this end, Mountain Bell considers numerous market factors, and derives therefrom an initial pricing figure. This figure is then examined to ascertain whether it will cover all incremental, or ongoing, costs of providing the service. No proportionate share of overhead costs common to all Mountain Bell services is included in such examination.

The user of a Mountain Bell PBX system under the proposed Telalease plan must continue for the fixed term of the lease. Should early termination be desired a charge is levied equal to the sum of the monthly payments for the unexpired portion of the initial lease period, with a credit allowed against any unpaid tier A payments equal to the reusable value of the equipment. The lease may be freely assigned.

Prior to Mountain Bell's presentation of the above tariff proposal, on September 22, 1976, BTS was permitted to intervene in the proceedings pending before the Public Service Commission. (BTS is a local member of a national trade association of vendors, lessors, and manufacturers of telephone equipment known as the North American Telephone Association (NATA), whose members have opposed similar tariff proposals before state public utility commissions across the country.) In addition, the office of the Utah State Attorney General filed an amicus curiae brief opposing the Mountain Bell tariff proposal in light of antitrust law. Following lengthy hearings at which all assertions and claims were fully examined, on December 2, 1977, the Commission entered its final report and order approving Mountain Bell's proposed two-tired Telalease system. On January 4, 1978, 33 days following the entry of the final report and order, BTS filed an application for rehearing before the Commission.[3] The Commission denied this petition on January 30, 1978, stating that the application was not timely filed as required by U.C.A., 1953, 54–7–15. BTS then filed a petition for a writ of certiorari with this Court on March 1, 1978. Mountain Bell made motion on May 30, 1978, to dismiss the petition filed by BTS on jurisdictional grounds, which motion was subsequently denied.

In response to BTS's claim of error, Mountain Bell reasserts that BTS failed to file a petition for rehearing before the Public Service Commission within the required time. Mountain Bell claims (1) that such an assertion may again be raised, notwithstanding this Court's denial of its May 30 motion to dismiss, and (2) that the failure to timely apply for rehearing deprives this Court of jurisdiction to rule in this matter. We are compelled to agree on both points.

 With regard to Mountain Bell's first contention, it is axiomatic that a tribunal's legal competence to hear a given claim and rule thereon is a fundamental prerequisite to all other considerations in the case. As such, an objection to the court's exercise of jurisdiction may be made at any point during the proceedings.[4] It is to be noted, moreover, that the denial of a motion to

---

3. The Division of Public Utilities also filed a motion for rehearing on December 22, 1977. The denial of that petition was not appealed, and we therefore do not deal with it.

4. See Rule 12(h)(2), Utah Rules of Civil Procedure, for a codification of this principle at the trial level.

dismiss does not necessarily constitute a ruling on the merits of the motion. As in the present case, such a denial may constitute no more than a decision, on the part of the court, to defer ruling on the merits of the motion together with the merits of the appeal itself, thereby permitting a more comprehensive treatment of the moving party's position. Consequently, it was permissible for Mountain Bell to again raise the issue of failure to timely file for rehearing.

■■■ With regard to Mountain Bell's second contention, we are constrained to hold that the requirements for filing an application for rehearing with the Public Service Commission prior to the effective date of the Commission order, (or within 20 days thereafter if the order becomes effective immediately), constitute a jurisdictional prerequisite to the grant of judicial review by this Court. Where the outlined procedures have not been complied with, this Court is without jurisdiction over the subject matter of the dispute.

■■■ It is to be noted, first, that the legislature has, within certain limits, the power to define the jurisdiction of this Court. While it is true that the provisions of Article VIII, Sec. 4 of the Utah Constitution cannot be enlarged or abridged with respect to fundamental access to the Court,[5] legislative enactment may prescribe the manner of invoking the jurisdiction of the Court.[6]

■■■ Where the legislature has in this fashion, legitimately delineated jurisdictional prerequisites for this Court, we are not at liberty to tamper indiscriminately with the boundaries so drawn. The legal competence of a court to hear and decide disputes is not a function of its own discretion. Generally, a court's lack of jurisdiction over

the subject matter of a dispute may not be waived by the parties, and may be raised by the court sua sponte.[7] Likewise, a court may not, when moved by an inclination to reach the merits of a particular case, ignore the fact that the case falls outside its legally-proscribed domain.[8]

With the foregoing in mind, we address the question of whether or not BTS, by its dilatory submission of an application for rehearing before the Public Service Commission, placed its case beyond the jurisdictional powers of this Court. The Utah legislature has specifically provided that any party "pecuniarily interested in the public utility affected, may apply for a rehearing in respect to any matters determined in (an) action or proceeding" before the Commission, but that *"no cause of action arising out of any order or decision of the commission shall accrue in any court to any corporation or person* unless such corporation or person shall have made application to the commission for a rehearing before the effective date of such order or decision, or, if such order or decision becomes effective prior to [20] days after its date, before [20] days after the order or decision."[9] (Emphasis added.) Following the application for rehearing the aggrieved party may, upon denial of the application or within 30 days thereafter, seek a writ of certiorari from this Court for a review of the action.[10] The statement that "no cause of action . . . shall accrue in any court," absent the proper and timely filing for an application for rehearing points explicitly to the right of the court to recognize such a cause of action. Where the time limit passes without the application being made, the right of the court to take cognizance of the party's grievance is cut off by operation of

5. *State ex rel. Robinson v. Durand*, 36 Utah 93, 104 P. 760 (1909).

6. *State v. Johnson*, 100 Utah 316, 114 P.2d 1034 (1941).

7. *Coray v. Southern Pacific Co.*, 112 Utah 166, 185 P.2d 963 (1947), *rev'd* on other grounds, 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208 (1949);

*Dixie Stockgrowers Bank v. Washington County*, 81 Utah 429, 19 P.2d 388 (1933).

8. *Woldberg v. Industrial Commission of Utah*, 74 Utah 309, 279 P. 609 (1929).

9. U.C.A., 1953, 54–7–15.

10. U.C.A., 1953, 54–7–16.

law.[11] Such a limitation of the right of a court to hear an appeal from an administrative decision has been commonly held to be jurisdictional in nature.[12]

 Petitioner BTS suggested, in response to the jurisdictional problem, that its counsel did not receive notice of the Public Service Commission final order in time to respond properly within the time limit set by statute. This implies that to deny BTS access to the court on the basis of failure to timely apply for rehearing would constitute a denial of due process.[13] We need not reach the question of whether or not notice was required in such a case as this, for there is ample evidence to suggest that BTS had notice and sufficient time thereafter to respond. By his own assertion, counsel for BTS received a written copy of the final report and order of the Public Service Commission in this matter on December 16, 1977. Counsel for BTS further indicated that he received actual notice of the Commission's action by telephone "during the second week in December," which began on the fourth day of that month in 1977, and ended on the tenth day. Since the Commission's order became effective upon issue (that is, on December 2, 1977), BTS had until December 22, 1977, to submit an application for rehearing. Note also that, even if we were to toll the running of the statutory period until BTS received actual notice of the decision (December 10th at the latest), the statutory period would still have been exceeded. Notice was thus sufficient to enable BTS to make its application within the prescribed time limit, and denial of access to this Court due to its failure to make such application constitutes no due process violation.

As the matter here under consideration does not fall within our jurisdiction, we do not reach the merits of the claims raised by BTS.

The order of the Commission is hereby affirmed. No costs awarded.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.

---

11. *Bowen Trucking, Inc. v. Public Service Commission,* Utah, 559 P.2d 954 (1977).

12. 2 Am.Jur.2d, Administrative Law, Sec. 718, Sec. 732; 4 Davis, Administrative Law Treatise, Sec. 28.20; *Brooks v. Dierker,* 275 Or. 619, 552 P.2d 533 (1976).

13. Article I, Sec. 7, Constitution of the State of Utah; Amendment 14, Constitution of the United States.