Brian M. **BARNARD**, Plaintiff
and Appellant,

v.

Ann L. **WASSERMANN**, Shirley Randazzo, and the Honorable Michael Murphy, Judge of the Third District Court in and for Salt Lake County, State of Utah, Defendants and Appellees.

No. 920259.

Supreme Court of Utah.

June 17, 1993.

Brian M. Barnard, John Pace, Salt Lake City, for Barnard.

Colin R. Winchester, Salt Lake City, for Judge Murphy.

Ann L. Wassermann, Salt Lake City, for herself and Shirley Randazzo.

DURHAM, Justice:

Plaintiff Brian Barnard, a Utah attorney, claims that he was sanctioned inappropriately for failing to properly represent his client, Frank Randazzo, in a divorce proceeding and for failing to notify his client of the court's prior rulings in the divorce. Barnard sued his client's ex-wife, her attorney, and the judge presiding over the divorce. He appeals the grant of summary judgment in favor of the judge and dismissal of the claim against his client's ex-wife. We affirm both orders.

## FACTS

Ms. Randazzo brought suit against her ex-husband, Barnard's client, seeking contempt charges for his alleged failure to obey a previously entered divorce order. At a September 13, 1989 hearing on the allegations, the Honorable Michael Murphy, Third District Court Judge, ordered Mr. Randazzo to pay opposing counsel Ann Wassermann[1] $430 in attorney fees originally owed to Barnard. Neither Mr. Randazzo nor Barnard appeared at the scheduled time; Mr. Randazzo appeared pro se more than one and one-half hours after the scheduled time in response to a telephone call from the court. The court noted that

Barnard had filed a notice of withdrawal as counsel at that time.[2]

When Mr. Randazzo finally appeared, he described to the court Barnard's representation in the divorce proceeding, alleging, among other things, that Barnard had failed to notify him of the scheduled hearing. Based on those unsworn comments and the facts underlying the action, the court denied the motion for contempt against Mr. Randazzo. The court ordered Mr. Randazzo to pay Ms. Randazzo $430 "as and for attorney's fees" incurred in the contempt proceeding and instructed Mr. Randazzo not to pay Barnard until he paid the $430 amount, which would be "credited, dollar for dollar against [Mr. Randazzo's] outstanding balance with his prior counsel, Brian Barnard." In effect, the court charged Barnard for the costs associated with the contempt proceeding.

After the contempt hearing, Wassermann prepared a proposed order to which Barnard submitted objections on September 18, 1989. On September 20, 1989, Barnard requested a hearing on his objections. Judge Murphy signed the proposed order on October 12, 1989, without first holding a hearing on Barnard's objections. However, the order was not entered in the court's records at that time. Shortly thereafter, Judge Murphy's clerk informed Barnard that the judge had signed the proposed order, that it had not yet been entered, and that the judge had instructed her to hold it until Barnard informed her whether he wanted to have a hearing on his objections. Barnard told the clerk that he would "take care of it in another way." The order was finally entered on November 14, 1989.

One week later, Barnard filed a civil rights suit in federal court alleging that Judge Murphy, acting under color of state law, deprived him of his property and liberty interests without due process of law and that Wassermann acted in concert with him. The action was dismissed for lack of

1. Wassermann, the third named defendant, appeared as counsel for Ms. Randazzo in the divorce proceedings.

2. Ms. Randazzo argues on appeal that Barnard's withdrawal as counsel was improper. We need not reach the merits of her argument because we affirm the trial court on other grounds.

subject matter jurisdiction.[3] Barnard then sought declaratory and other relief in state court in a collateral attack on Judge Murphy's order, naming as defendants Judge Murphy, Ms. Randazzo, and Wassermann. The district court dismissed the complaint against Ms. Randazzo for failure to state a cause of action and granted summary judgment for Judge Murphy on the grounds of res judicata, judicial immunity, and waiver.[4]

Barnard appeals from the two state court orders disposing of his claims. He makes the following arguments: (1) The district court lacked subject matter jurisdiction to impose sanctions; (2) the district court lacked personal jurisdiction; (3) the order imposed sanctions for which no factual basis existed; (4) Barnard stated a valid claim pursuant to 42 U.S.C. § 1983; (5) Judge Murphy was not entitled to judicial immunity; (6) res judicata does not bar Barnard's claims; and (7) Barnard did not waive his right to challenge the validity of the order.

Judge Murphy responds to Barnard's contentions by asserting that Barnard waived his right to challenge the order, that judicial immunity barred Barnard's suit, and that res judicata barred the suit. Ms. Randazzo claims that she has no property interest in this matter and that Barnard's withdrawal as counsel was improper. Because we hold that the trial court properly dismissed the claim against Ms. Randazzo and properly granted summary judgment in favor of Judge Murphy, we address only those arguments relevant to our holdings and consider them in an order that facilitates our analysis.

## DISMISSAL FOR FAILURE TO STATE A CLAIM

■ Barnard argues that the trial court improperly dismissed his complaint against Ms. Randazzo for failure to state a claim. In reviewing this dismissal, we give no deference to the trial court's ruling and apply a correctness standard. *St. Benedict's Dev. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). In so doing, we must construe the complaint in the light most favorable to plaintiff and indulge all reasonable inferences in plaintiff's favor. *Id.*

■ Applying that standard, we agree with the trial court's dismissal of the claim against Ms. Randazzo. The trial court correctly concluded that Barnard did not allege any act or omission of Ms. Randazzo that would subject her to liability. She was involved only as a party in the underlying divorce proceeding; liability on her part, if any existed, could derive only from a finding that Judge Murphy's order was invalid. Barnard has not asserted,[5] nor have we found in the record, any basis upon which he would be entitled to relief according to the facts he has alleged with respect to Ms. Randazzo. Because we hold below that Judge Murphy's order was valid and because we find no other basis for relief, we affirm the dismissal of the complaint against Ms. Randazzo.

## SUMMARY JUDGMENT

■ In reviewing the summary judgment granted in favor of Judge Murphy, we will affirm if "no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Transamerica Cash Reserve v. Dixie Power*, 789 P.2d 24, 25 (Utah 1990). We review conclusions of law for correctness, according no particular deference to the lower court. *CECO v. Concrete Specialists, Inc.*, 772 P.2d 967, 969 (Utah 1989).

3. The federal court also noted that the relief Barnard sought was barred by judicial immunity.

4. The record is unclear as to the ultimate disposition of the claim against Wassermann in the district court. However, Barnard's notice of appeal indicates that he is challenging only the orders in favor of Ms. Randazzo and Judge Murphy. Moreover, his claim against Wassermann must fail for the same reasons as his claim against Ms. Randazzo.

5. In his brief, Barnard alleges only that Ms. Randazzo is an indispensable party; he gives no persuasive explanation for her alleged liability. He cites Utah Rule of Civil Procedure 19(a)(2) as his basis for including her in the suit.

Our review of the record reveals no significant factual disputes. Accordingly, we consider whether Judge Murphy was entitled to judgment as a matter of law. We conclude that he was, based on the doctrine of waiver, as described below. Consequently, we need not reach the issues of res judicata and judicial immunity. Similarly, we do not reach Barnard's allegation that the trial court lacked personal jurisdiction, because he also waived that objection. *See Petrowski v. Hawkeye–Security Ins. Co.,* 350 U.S. 495, 496, 76 S.Ct. 490, 492, 100 L.Ed. 639 (1956) (per curiam). However, we will consider Barnard's challenge to subject matter jurisdiction since such defects may not be waived by either party and may be raised at any time. *Olson v. Salt Lake City Sch. Dist.,* 724 P.2d 960, 964 (Utah 1986); *Utah Dep't of Bus. Reg. v. Public Serv. Comm'n,* 602 P.2d 696, 699 (Utah 1979); Utah R.Civ.P. 12(h).

### Waiver

 Barnard claims that Judge Murphy's order deprived him of his constitutionally protected property interest in his legal fees and his liberty interest in his reputation. In considering his claim, we note that although courts indulge a presumption against waiver of constitutional rights, the presumption is rebuttable. *Pitts v. Board of Educ.,* 869 F.2d 555, 557 (10th Cir.1989). Waiver is deemed to occur when the totality of the circumstances indicates an intentional abandonment or relinquishment of a known constitutional right. *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981); *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Pitts,* 869 F.2d at 557.

 Barnard argues that he did not waive his objections to Judge Murphy's order when he declined a hearing and chose to pursue the matter in a different way. He claims that he was deprived of property

and liberty without due process when Judge Murphy signed the order. This argument mischaracterizes the facts. Assuming arguendo that the order indeed deprived Barnard of property, that deprivation did not occur until the order was *entered.* Although Judge Murphy signed the order on October 12, 1989, it did not become effective and was not a matter of public record until the entry date of November 14, 1989.

Barnard is correct that waiving a *hearing* on objections to a proposed order ordinarily does not waive the objections in any way. However, his objection was that he was entitled to a predeprivation hearing on the imposition of sanctions. The hearing he rejected served to satisfy that right because at the time it was offered, no actual order was in effect and hence no deprivation had yet occurred. It is thus unfortunate that Barnard did not accept the offer of a hearing at which this matter might have been resolved quickly.[6] Instead, he voluntarily relinquished the predeprivation process offered to him prior to entry of the order when he rejected the opportunity to have a hearing on his objections.

Barnard's request for a hearing on his objections indicates his knowledge of his constitutional rights. We presume that as an attorney, Barnard was aware of the consequences of his decision to pursue alternative channels to air his objections. Furthermore, his desire to take care of the matter "in another way" suggests that he considered the various means of voicing his objections and chose a legal remedy other than the requested hearing. However, by so choosing, he waived his right to further consideration of those claims.

### Jurisdiction

 Barnard further challenges both the personal and subject matter jurisdiction

---

**6.** In support of his objections, Barnard averred that he had notified Mr. Randazzo of the court's decision in the divorce proceeding that was announced August 2, 1989, in his absence and that he had mailed to him copies of the proposed findings of fact and decree of divorce. Had a hearing on Barnard's objections been held, Mr. Randazzo presumably would have appeared and could have been cross-examined concerning his unsworn denial to Judge Murphy that he had received such notice and copies from Barnard.

of the district court to order the award of attorney fees. We conclude that by failing to pursue his objections to Judge Murphy's order as described above, Barnard waived that portion of the claim pertaining to personal jurisdiction. However, his challenge to subject matter jurisdiction remains viable. This court has made clear that challenges to subject matter jurisdiction may be raised at any time and cannot be waived by the parties. *Olson*, 724 P.2d at 964; *Utah Dep't of Bus. Reg.*, 602 P.2d at 699; Utah R.Civ.P. 12(h). However, the law on waiver of objections to personal jurisdiction is less clear. Many cases refer to jurisdiction generally, *see, e.g., Olson*, 724 P.2d at 964, but a close reading of those cases suggests that they actually involve subject matter jurisdiction rather than personal jurisdiction. We conclude that the prohibition against waiver applies only to subject matter jurisdiction and note that this conclusion is consistent with federal law. *See Petrowski*, 350 U.S. at 496, 76 S.Ct. at 490 (holding that parties who stipulated to personal jurisdiction waived any right to assert a lack of personal jurisdiction); *cf. Utah Dep't of Bus. Reg.*, 602 P.2d at 699 (asserting that parties may not waive subject matter jurisdiction).

■ We therefore address only Barnard's claim that the district court lacked subject matter jurisdiction to impose sanctions. We find his arguments unpersuasive. In his brief, Barnard characterizes the award of attorney fees as punishment for "ethical violations" not within the purview of the district court. We do not agree that the award constituted sanctions for ethical violations. Judge Murphy's order explicitly states that the award in question was an award of attorney fees, apparently ordered to compensate for time lost and inconvenience occasioned by Barnard's behavior:

> Defendant shall pay to Plaintiff the sum of $430.00 *as and for attorney's fees incurred by Plaintiff in connection with this contempt proceeding.* The Defendant is ordered not to pay any money to his former counsel, Brian Barnard, until the award of attorney's fees is paid to counsel for the Plaintiff. Further, any monies paid by Defendant to counsel for Plaintiff in satisfaction of this obligation shall be credited, dollar for dollar against Defendant's outstanding balance with his prior counsel, Brian Barnard.

(Emphasis added.) While the award in question took the form of a sanction, it was not a sanction for an ethical violation; instead, it allocated costs to compensate for the delay, inconvenience, and expense resulting from Barnard's behavior. The court found that Mr. Randazzo had not received notice of the contempt hearing, that Barnard had not given Mr. Randazzo timely notice of the court's decision in the divorce proceeding, and that Barnard had not forwarded to Mr. Randazzo copies of the proposed findings and divorce decree. As a result of those failings, the hearing before Judge Murphy was delayed for one and one-half hours, and Mr. Randazzo nearly failed to appear at the hearing, which in all likelihood would have resulted in further contempt charges against him.

Barnard's contention that the award was a sanction for ethical violations or alternatively for contempt[7] is thus unavailing. Rather, the court was properly exercising its inherent power to enforce compliance with its rules. As we noted nearly a century ago:

7. We recognize that some confusion has resulted concerning the proper characterization of Judge Murphy's order. The trial court, in its findings of fact and conclusions of law, referred to "the contempt proceedings against plaintiff [Barnard]" and apparently treated the order as a sanction for contempt. However, the proceeding in question involved allegations of contempt against *Mr. Randazzo*. Nowhere does Judge Murphy's order refer to contempt on the part of Barnard; it merely denies Ms. Randazzo's motion for a finding of contempt against Mr. Randazzo. Because the language of the order characterizes the $430 in question as an award of attorney fees compensating for the expense of the contempt proceeding, we construe the order as a fine or penalty for the inconvenience and lost time ensuing from Barnard's behavior rather than as a sanction for contempt. Consequently, we decline to address Barnard's arguments on the issue of contempt, including his assertion that the facts do not support a contempt sanction.

It is undoubtedly true that courts of general and superior jurisdiction possess certain inherent powers not derived from any statute. Among these are the power to punish for contempt, *to make, modify, and enforce rules for the regulation of the business before the court, ... to recall and control its process, to direct and control its officers, including attorneys as such,* and to suspend, disbar, and reinstate attorneys. Such inherent powers of courts are necessary to the proper discharge of their duties.... [Absent legislative limitations] a constitutional court of general and superior jurisdiction may exercise such inherent powers and summary jurisdiction as the necessity of the case may require, and in [a] manner comporting with a proper discharge of its duties in the premises.
. . . .

The summary jurisdiction which the court has over its attorneys as officers of the court ... is inherent, continuing, and plenary ... and ought to be assumed and exercised ... not only to maintain and protect the integrity and dignity of the court, to secure obedience to its rules and process, and to rebuke interference with the conduct of its business, but also to control and protect its officers, including attorneys.

*In re Evans,* 42 Utah 282, 130 P. 217, 224–25 (1913) (emphasis added); *see also In re Barclay,* 82 Utah 288, 24 P.2d 302, 303 (Utah 1933) (noting inherent power to discipline attorneys in discussion of court's power to suspend attorneys from practice); *In re Burton,* 67 Utah 118, 246 P. 188, 199 (1926) (describing court's inherent power to deal with its own officers, including attorneys).

 As we suggested in *In re Evans,* courts of general jurisdiction, such as the district court in this case, possess certain inherent power to impose monetary sanctions on attorneys who by their conduct thwart the court's scheduling and movement of cases through the court. 130 P. at 224; *see also* Jean E. Maess, Annotation, *Authority of Trial Judge to Impose Costs or Other Sanctions Against Attorney Who Fails to Appear at, or Proceed with,*

*Scheduled Trial,* 29 A.L.R.4th 160 (1984). Similarly, trial courts in the federal system have such inherent power. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *see also* Debra T. Landis, Annotation, *Inherent Power of Federal District Court to Impose Monetary Sanctions on Counsel in Absence of Contempt of Court,* 77 A.L.R.Fed. 789 (1986). This inherent power of trial courts is separate and distinct from the contempt powers they may exercise in appropriate cases.

 A court's power to enforce its rules implies the existence of a mechanism for enforcement. That mechanism may take a variety of forms, one example of which is the assessment of attorney fees. Without sanctions, the power to enforce would be meaningless. As well as being consistent with our precedent in this area, this result also comports with the trial court's statutory authority to control proceedings before it. Utah Code Ann. §§ 78–7–5, 78–7–17.

Because Barnard's actions interfered with the administration of justice and resulted in wasted time and effort by opposing counsel, we conclude that the award in question was squarely within the bounds of the trial court's authority. Although not explicitly provided for by rule, such awards are within the inherent powers of the court and are in fact imposed regularly as a means of controlling the conduct of attorneys and litigants. Therefore, we hold that the district court properly exercised its subject matter jurisdiction in ordering Barnard to pay the attorney fees.

We have considered the other arguments raised by the parties on appeal and find them to be without merit. In conclusion, we affirm the orders of the trial court.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.